J-S94041-16

2017 PA Super 132

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DONTE LAMAR PARKER | |
| Appellant | No. 877 MDA 2016 |

Appeal from the Judgment of Sentence April 27, 2016
in the Court of Common Pleas of Lancaster County Criminal Division
at No(s):
CP-36-CR-0005814-2014
CP-36-CR-0005837-2014

BEFORE: LAZARUS, RANSOM, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                                          **FILED MAY 01, 2017**

Appellant, Donte Lamar Parker, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas following his convictions for possession of a controlled substance with the intent to deliver ("PWID"),[1] criminal use of a communication facility[2] and criminal conspiracy.[3] Appellant challenges the trial court's order denying his motion to suppress information that he provided to police officers during an encounter on the street on August 1, 2014. We reverse the order denying suppression.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 7512(a).

[3] 18 Pa.C.S. § 903(a)(1).

On November 20, 2014, Appellant was arrested for committing drug-related offenses on June 24, 2014 and July 17, 2014. The Commonwealth filed (1) an information at No. 5814-2014 charging Appellant with committing PWID and criminal use of a communication facility on June 24, 2014, and (2) an information at No. 5837-2014 charging Appellant with committing PWID, criminal conspiracy and criminal use of a communication facility on July 17, 2014. Subsequently, the trial court granted the Commonwealth's motion to consolidate both informations for trial.

Prior to trial, Appellant filed a motion to suppress evidence that police officers obtained during an encounter on the street with Appellant on August 1, 2014.[4] Mot. to Suppress, 7/17/15. On February 1, 2016, the trial court held an evidentiary hearing and denied the motion.

The trial court did not enter findings of fact and conclusions of law at the conclusion of the suppression hearing, but it found the following facts in its Pa.R.A.P. 1925(a) opinion:[5]

---

[4] The data obtained on August 1, 2014 was important to the Commonwealth's case because police officers used it to connect Appellant to the drug-related offenses on June 24, 2014 and July 24, 2017. *See, e.g.,* N.T., 2/2/16, at 281 (Commonwealth's closing argument that phone number provided by Appellant on August 1, 2014 was the same number that was used to set up drug sales on June 24, 2014 and July 17, 2014).

[5] When the trial court does not enter findings of fact and conclusions of law during suppression proceedings, this Court may garner the trial court's findings of fact and conclusions of law from its Pa.R.A.P. 1925(a) opinion. *See Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa. Super.

- 2 -

On June 24, 2014, Officer James Hagy was the secondary surveillance officer for a "buywalk" operation[1] in the first block of West James Street in the City of Lancaster. The primary surveillance officer that day was Officer James Boas. Officer Hagy testified that the target of the investigation was a dealer that went by the street name of "Heart". Officer Boas radioed to his fellow officers the following description of the target that was received from the undercover officer involved in the drug buy: "black male, dreadlock style hair, wearing an orange shirt, [and] camo shorts." Officer Hagy testified that he then observed the individual leaving the location where the buy occurred, and noticed that he walked with a limp or "unique gait".

> [1]Officer Hagy described a "buy-walk" operation as one where the police utilize an undercover police officer and sometimes a confidential informant to go out and make street-level drug buys. After that buy, the individual that sold drugs to the undercover or the informant is allowed to leave and is identified at a later time, whether it's using investigatory means with cameras, researching databases with different addresses, phone numbers, *et cetera*. As an absolute last resort, they are stopped and identified.

On August 1, 2014, Officer Hagy was parked in a police van at the McDonald's parking lot on West King Street in the City of Lancaster when he observed the individual from June 24, 2014, whom he knew by the street name "Heart". Officer Hagy was "100 percent positive that [this man] was the same individual" he had observed on June 24th. Because "Heart" was the subject of an ongoing felony drug investigation by the Selective Enforcement Unit, Officer Hagy instructed Officer Boas, who was on bike patrol at the time, to stop the individual.

---

2003) (citing *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002)).

Officer Boas testified that on August 1, 2014, at approximately 10:00 p.m., he was on bike patrol in the vicinity of the McDonald's on West King Street. Officer Boas was informed by Officer Hagy at that time that their target, known on the street as "Heart," was observed walking from the McDonald's parking lot east on West King Street. Officer Boas followed this individual for a short time and then stopped him at the corner of Prince and King Streets. As a pretext for stopping him, Officer Boas testified that he told the individual "there was a disturbance at McDonald's and he was a part of the disturbance." Officer Boas asked for the man's name, date of birth, address, telephone number and Social Security number because the suspect did not have any identification on him at the time. After the suspect's identity was confirmed, he was released. At all times, the suspect was cooperative and provided the information requested of him. The detention lasted no longer than five minutes. Officer Boas conceded on cross-examination that the sole purpose for the stop was to identify the suspect for purposes of their felony drug investigation.

Trial Ct. Op., 7/18/16, at 5-7 (with minor grammatical revisions and record citations omitted). These findings of fact are accurate except for one omission. Officer Boas did not stop Appellant by himself on August 1, 2014. Instead, both Officer Boas and Officer Mease stopped Appellant by stationing their bicycles in front of him. N.T. Suppression Hr'g, 2/1/16, at 29-30.

Appellant moved to suppress the information that he gave Officer Boas on August 1, 2014, *i.e.*, his name, date of birth, address, telephone number and Social Security number, on the grounds that Officer Boas (1) lacked reasonable suspicion to detain Appellant, and (2) gave a pretextual reason for stopping Appellant. *Id.* at 3-4. Following an evidentiary hearing, the

trial court found that Officer Boas had reasonable suspicion to stop Appellant and denied Appellant's motion. *Id.* at 37.

On February 2, 2016, a jury found Appellant guilty of all charges. The trial court sentenced Appellant on April 27, 2016 to an aggregate term of sixteen months' to three years' imprisonment followed by two years' probation. On May 27, 2016, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises one issue in this appeal, a challenge to the evidence obtained from him on August 1, 2014:

> Did the trial court err in denying [Appellant's] Motion to Suppress, where police subjected him to an investigative detention without reasonable suspicion that he was involved in any illegal activity on August 1, 2014?

Appellant's Brief at 5.

When this Court addresses a challenge to the denial of a suppression motion,

> [we are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the

suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015) (citation omitted). When reviewing the suppression court's rulings, we consider only the suppression record. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013) ("it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing").[6]

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). In Fourth Amendment jurisprudence, there are three categories of interactions between citizens and the police:

> The first [category] is a "mere encounter" (or request for information) which need not be supported by any level of suspicions, but carries no official compulsion to stop or respond. The second, an "investigative detention," must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

---

[6] In accordance with *L.J.*, the trial court limited the discussion in its Pa.R.A.P. 1925(a) opinion to the evidence adduced during the suppression hearing.

***Commonwealth v. Gutierrez***, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(citation omitted).

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

***Commonwealth v. Clemens***, 66 A.3d 373, 379 (Pa. Super. 2013) (citation

omitted).

The Pennsylvania Supreme Court has adopted the objective

***Jones***/***Mendenhall***[7] standard "in determining whether the conduct of the

police amounts to a seizure or whether there is simply a mere encounter

between citizen and police officer." ***Commonwealth v. Matos***, 672 A.2d

769, 774 (Pa. 1996) (citations omitted). The ***Matos*** court elaborated:

> In [***Commonwealth v. Hicks***, 253 A.2d 276 (Pa. 1969)], this Court adopted the United States Supreme Court's decision in ***Terry v. Ohio***, 392 U.S. 1, [] (1968), which permits a police officer to effect a precautionary seizure where the police have a reasonable suspicion that criminal activity is afoot. ***Terry***, and by analogy ***Hicks***, recognized that there are some instances in which an individual may

---

[7] ***United States v. Mendenhall***, 446 U.S. 544 (1980); ***Commonwealth v. Jones***, 378 A.2d 835 (Pa. 1977).

> not be arrested, but will still be considered to be "seized."
> In **Jones**, this Court adopted an objective standard[8] for
> determining what amount of force constitutes the initiation
> of a **Terry** stop: whether a reasonable [person] innocent
> of any crime, would have thought he was being restrained
> had he been in the defendant's shoes. This case, which
> preceded the United States Supreme Court's decision in. . .
> **Mendenhall**, . . . was a precursor to the so-called
> "**Mendenhall**" test posited by the United States Supreme
> Court: 'a person has been 'seized' within the meaning of
> the Fourth Amendment only if, in view of all the
> circumstances surrounding the incident, a reasonable
> person would have believed he was not free to leave."

**Id.** at 773-74 (some punctuation and citations omitted).

In applying this "totality of the circumstances" test,

> the focus is directed toward whether, by means of physical
> force or show of authority, the citizen-subject's movement
> has in some way been restrained. In making this
> determination, courts must apply the totality-of-the-
> circumstances approach, with no single factor dictating the
> ultimate conclusion as to whether a seizure has occurred.

**Commonwealth v. Strickler**, 757 A.2d 884, 890 (Pa. 2000) (footnotes and citation omitted). "The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority." **Lyles**, 97 A.3d at 302 (citation omitted).

---

[8] The subjective beliefs of the officer, *e.g.*, a belief that a seizure occurred and the seized individual is not free to leave, "are immaterial to an objective seizure determination." **Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014).

Factors examined in the totality-of-the-circumstances approach include "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 (Pa. 1998). The Superior Court has also provided a non-exclusive list of factors, which includes:

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*) (citation omitted).

Importantly, one combination of factors constitutes an investigatory detention as a matter of law. "[T]he combination of the threatening presence of several officers and the indication that appellant was suspected of criminal activity [requires the conclusion that] a reasonable person would believe that he was not free to leave." *Commonwealth v. Martin*, 705

A.2d 887, 891 (Pa. Super. 1997) (citing **Commonwealth v. Wright**, 672 A.2d 826, 829 (Pa. Super. 1996)).[9]

In the present case, Officers Boas and Mease confronted Appellant on the street at night. Officer Boas falsely stated[10] to Appellant that he was part of a disturbance at a McDonald's and requested information pertaining to Appellant's identity. The presence of two officers, along with Officer Boas' suggestion that Appellant was suspected of criminal activity, gave rise to an investigative detention, because a reasonable person in Appellant's position would not have felt free to leave. **Martin**, 705 A.2d at 891; **Wright**, 672 A.2d at 829. Moreover, the officers did not have reasonable suspicion to stop Appellant. Although Officer Hagy observed Appellant engage in a drug transaction on June 24, 2014, over one month earlier, there was no criminal activity afoot on the evening of August 1, 2014. Appellant was simply walking down the street. Indeed, his lack of criminal activity prompted

---

[9] This precept is consistent with decisions from other jurisdictions. **See**, **e.g.**, **United States v. Brown**, 448 F.3d 239, 245 (3d Cir. 2006) (investigatory detention took place where officer made "clear show of authority" by telling defendant and his companion "that a robbery victim was being brought over to identify them as possible suspects and, if they were not identified, they would be free to go"); **United States v. Saperstein**, 723 F.2d 1221, 1226 (6th Cir. 1983) (defendant seized where agent made "the definite statement that he had information concerning the [defendant] and his probable activities as a drug courier"); **State v. Walker**, 251 P.3d 618, 623 (Kan. 2011) (investigatory detention where officer "told Walker he was talking to Walker because he fit the suspect's description in a nearby criminal incident and immediately asked for Walker's ID").

[10] When asked whether he "made up a ruse" in order to ask for Appellant's information, Officer Boas answered: "Yes." N.T. Suppression Hr'g, at 31.

Officer Boas to invent the pretext that Appellant had been part of a recent disturbance at a McDonald's.

We recognize that multiple recent decisions have held that police officers do not need reasonable suspicion to ask individuals for identification. *See Lyles*, 97 A.3d at 306-07; *Commonwealth v. Au*, 42 A.3d 1002, 1007 (Pa. 2012); *Commonwealth v. Baldwin*, 147 A.3d 1200, 1204 (Pa. Super. 2016). For example, in *Au*, a police officer had an encounter late at night with occupants of a parked vehicle, who responded that they were hanging out and that there were juveniles in the vehicle. *Au*, 42 A.3d at 1003. The officer approached, asked what was going on and requested identification from the occupants. *Id.* The officer did not activate the emergency lights on his cruiser, position his cruiser so as to block the vehicle from exiting parking lot, brandish his weapon, make intimidating movements, threats, or commands, or speak in authoritative tone. *Id.* Our Supreme Court held that the officer's request for identification did not, by itself, transform the encounter into an investigatory detention. *Id.* at 1009; *see also Lyles*, 97 A.3d at 304-06 (interaction in which officers approached defendant and another man in front of abandoned building in area where numerous burglaries had recently occurred, asked what they were doing there, and requested identification did not escalate beyond mere encounter; officer's jotting down of identification information, as opposed to attempting to memorize it, did not restrain defendant's freedom of movement, officer's

request was not accompanied by physical restraint, manifestation of authority, or a mandate to comply, and officer did not tell defendant that he was not free to leave, or brandish a weapon); *Baldwin*, 147 A.3d at 1201, 1204 (police officers' request for identification from defendant was mere encounter, where officers approached defendant in their marked patrol car in parking lot without activating their emergency lights, believing that he may have discarded contraband behind a vehicle, and officers did not block defendant's path).

These decisions are distinguishable from the present case for a simple reason: the investigating officers in these cases did not suggest that the defendants were suspected of criminal wrongdoing, and therefore the encounters did not transform into investigatory detentions. In contrast, Officer Boas insinuated that Appellant was involved in a criminal disturbance at McDonald's, and therefore a reasonable person in Appellant's position would not have felt free to leave. *See Martin*, 705 A.2d at 891; *Wright*, 672 A.2d at 829.

For these reasons, we conclude that the trial court erred in denying Appellant's motion to suppress. This error prejudiced Appellant, because the Commonwealth used the information obtained from Appellant on August 1, 2014 to connect him to the drug transactions on June 24, 2014 and July 17, 2014. Accordingly, we reverse and remand for a new trial.

Judgment of sentence vacated. Suppression order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Lazarus joins the Opinion.

Judge Ransom Concurs in the Result.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2017