J-A12006-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DELBERT J. RAY | : | |
| | : | |
| Appellant | : | No. 1343 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 31, 2019
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000728-2018

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED SEPTEMBER 18, 2020

Appellant, Delbert J. Ray, appeals from the judgment of sentence imposed by the Court of Common Pleas of Beaver County (trial court) following his conviction for driving under the influence (DUI) - high rate of alcohol.[1] Appellant argues that the trial court erred in denying his motion to suppress the results of a breath test for blood alcohol and other evidence, on the ground that the evidence was obtained as a result of an investigative detention without reasonable suspicion.  For the reasons that follow, we affirm.

Appellant was arrested on the evening of February 3, 2018, after an officer of the Pennsylvania State Police, Corporal Joseph Olayer, had followed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(b).

Appellant's pickup truck and asked Appellant a number of questions after Appellant had parked and walked away from his vehicle. Appellant filed a motion to suppress and a hearing on the motion to suppress was held on October 2, 2018. Two witnesses testified at the suppression hearing, Corporal Olayer and Appellant.

The trial court judge who ruled on Appellant's suppression motion found the following facts:

> On February 3, 2018, [Corporal] Olayer of the Pennsylvania State Police was on patrol traveling south on SR 18 in Big Beaver Borough when he observed a red Dodge truck (PA Registration #ZLB-7237) traveling below the 50 mph posted speed limit in the right lane. [Corporal] Olayer also observed the vehicle cross the right fog-line with its passenger side tires.
>
> Following these observations, [Corporal] Olayer used the left lane to pull up alongside the subject vehicle in order to ascertain whether the driver was using a cellular device in violation of the Motor Vehicle Code. After this observation revealed no violation of the Motor Vehicle Code, [Corporal] Olayer followed the subject vehicle as it turned west onto SR 551. As [Corporal] Olayer followed a few cars behind, he observed the suspect vehicle turn south onto 5th Avenue, and [Corporal] Olayer continued to follow. Soon thereafter, [Corporal] Olayer observed the suspect vehicle make a left turn onto 47th Street, pull over to the curb, and park.

Trial Court Opinion, 11/2/18 at 1-2 (footnote omitted). After his initial observation that Appellant's vehicle had crossed the fog line, Corporal Olayer observed no other Motor Vehicle Code violations while following the vehicle as it turned onto SR 551 through the time it was parked on 47th Street; Appellant did not speed, employed proper signaling, stopped at all stop signs, and made all turns safely and within his lane. Id. at 2 n.3.

The trial court further found that after Appellant parked his pickup truck,

> [Corporal] Olayer remained on 5th Ave. and continued to observe the suspect vehicle. At the suppression hearing, [Corporal] Olayer testified that the vehicle was parked and shut off, but the driver remained in the vehicle for several minutes. Eventually, [Appellant] exits his vehicle, walks across 47th Street and [Corporal] Olayer observed him continue down an alleyway that runs parallel to 5th Avenue. At this point, [Corporal] Olayer ran the suspect vehicle's plates and noticed that the address where the vehicle was registered was nowhere near the present location.

> After [Corporal] Olayer parked his cruiser, he continued on foot down an alley way that runs behind the Edgewater Inn and parallel to the alley way [Appellant] walked down. As [Corporal] Olayer neared the parking lot of the Edgewater Inn, he observed the [Appellant] emerge from around a corner and walk towards the Edgewater Inn. At this point, [Corporal] Olayer approaches the [Appellant] and, "started making small talk with him[.]"

Trial Court Opinion, 11/2/18 at 2 (footnotes omitted) (quoting suppression hearing transcript). Corporal Olayer was in uniform when he approached Appellant. Id. at 8; N.T. Suppression Hearing at 75. During the course of this conversation, Corporal Olayer concluded that Appellant smelled of alcohol and, shining a flashlight on Appellant, he observed that Appellant's eyes were bloodshot. Trial Court Opinion, 11/2/18 at 3-5, 10; N.T. Suppression Hearing at 17.

Corporal Olayer then asked Appellant to submit to field sobriety tests and following the field sobriety tests, placed Appellant under arrest for DUI and transported him to the state police barracks for a breath test. Trial Court Opinion, 11/2/18 at 4-5; N.T. Suppression Hearing at 25; N.T. Trial at 23-24.

The breath test showed that Appellant's blood alcohol level was .132. N.T. Trial at 6-9.

The conversation during which Corporal Olayer concluded that Appellant had been drinking alcohol was recorded by the dash cam of his cruiser and the audio of that conversation was played at the suppression hearing. The trial court found that this conversation transpired as follows:

OLAYER: How you doing today, sir?

[APPELLANT]: Pretty good. How are you?

OLAYER: Pretty good. You, you lost, or anything?

[APPELLANT]: Pardon me?

OLAYER: Are you lost?

[APPELLANT]: No. Why?

OLAYER: Just wondered where you were heading.

[APPELLANT]: Right here.

OLAYER: Okay

[APPELLANT]: [inaudible]

OLAYER: Wings?

[APPELLANT]: Yeah.

OLAYER: What kind of wings?

[APPELLANT]: Hot wings.

OLAYER: Okay. They have good wings here?

[APPELLANT]: Yeah

OLAYER: Okay.

[APPELLANT]: Yeah, I know Jeff Gordon real well.

OLAYER: Who, Jeff Gordon?

[APPELLANT]: Yeah. He owns the place.

OLAYER: Okay. I just noticed you pulled in and everything, and uh, you were from Butler and everything when you parked there, and that's like, not your address on your license.

[APPELLANT]: No, I uh, I'm not from Butler. Portersville, well actually New Castle.

OLAYER: Okay. You took kind of an odd way to get down here, thought. You walked down that way when you could have just kept coming on 18.

[APPELLANT]: Well, sometimes this parking lot is full, so I usually park over there

OLAYER: You, you parked over there?

[APPELLANT]: Yeah, usually I pull right over there.

OLAYER: Okay. How much you have to drink tonight.

[APPELLANT]: Nothing, so far.

OLAYER: You sure, because I smell it on you.

[APPELLANT]: Well, I had a beer like an hour ago.

OLAYER: Okay.

[APPELLANT]: No. I'm not like, blasted.

OLAYER: No, I understand that, but you were driving a car and your eyes are bloodshot and everything like that, and you kind of ducked me there.

[APPELLANT]: [Inaudible]

OLAYER: Well I understand that and everything, so what I'm going to ask you to do now is go back to your vehicle and run some field sobriety to make sure.

[APPELLANT]: Okay. . . Did I do something wrong?

OLAYER: What?

[APPELLANT]: Did I do something wrong?

OLAYER: No. I just happened to be walking along, I saw you get out of that car, and I was walking down the street, and I like to talk to people and everything like that, and I happened to smell alcohol about you.

Trial Court Opinion, 11/2/18 at 3-5.

The trial court denied Appellant's motion to suppress on November 2, 2018 on the ground that the conversation that Corporal Olayer had with Appellant was a mere encounter that required no reasonable suspicion of any crime up until Corporal Olayer requested that Appellant submit to field sobriety tests. Following a nonjury trial, Appellant was convicted on May 24, 2019 of DUI - high rate of alcohol, and was sentenced on July 31, 2019 to six months' intermediate punishment. This timely appeal followed.

Appellant presents the following single issue for our review:

Whether the interaction between Defendant and the arresting State Trooper was conducted in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, §8 of the Pennsylvania Constitution so that the Court erred in characterizing the interaction between the arresting State Trooper as a "mere encounter" rather than an "investigative detention" and thus improperly failed to suppress all evidence obtained after the illegal detention of Defendant and thereafter permitted such evidence to be admitted at the Non-Jury Trial.

Appellant's Brief at 5.

- 6 -

Our review in an appeal from the denial of a suppression motion is limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Commonwealth v. Parker, 161 A.3d 357, 361 (Pa. Super. 2017). Where the lower court's factual findings are supported by the record, this Court is bound by those findings and may reverse only if the lower court's legal conclusions are erroneous. Commonwealth v. Luczki, 212 A.3d 530, 541-42 (Pa. Super. 2019); Parker, 161 A.3d at 362. The lower court's legal conclusions, however, are not binding on an appellate court and are subject to our plenary, de novo review. Commonwealth v. Adams, 205 A.3d 1195, 1199 (Pa. 2019); Parker, 161 A.3d at 362.

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable seizures by government officials. Adams, 205 A.3d at 1199; Parker, 161 A.3d at 362.

> Not every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protections. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

Adams, 205 A.3d at 1199 (quoting Florida v. Bostick, 501 U.S. 429 (1991)). A citizen, however, "may not be detained even momentarily without reasonable, objective grounds for doing so." Commonwealth v. Cost, 224 A.3d 641, 652 (Pa. 2020) (emphasis in original) (quoting Florida v. Royer,

460 U.S. 491 (1983)); see also Adams, 205 A.3d at 1201 ("The Fourth Amendment does not have a time limit; it protects individuals from unreasonable seizures, no matter how brief").

There are three levels of interaction between police officers and citizens: (1) a mere encounter, (2) an investigative detention, and (3) an arrest or custodial detention. Adams, 205 A.3d at 1199-1200; Commonwealth v. Young, 162 A.3d 524, 528 (Pa. Super. 2017); Parker, 161 A.3d at 362. An interaction between a police officer and a private citizen is a mere encounter where the citizen is under no compulsion to stop or respond to the officer and is free to ignore the officer and continue on his way. Adams, 205 A.3d at 1199; Young, 162 A.3d at 528. Because the citizen is under no compulsion, a mere encounter does not constitute a seizure, and need not be supported by any suspicion of criminal activity. Adams, 205 A.3d at 1199; Young, 162 A.3d at 529.

In contrast, an investigative detention requires that the citizen temporarily stop and respond to the officer's requests. Adams, 205 A.3d at 1199-1200; Young, 162 A.3d at 528. An investigative detention therefore constitutes a seizure and is constitutionally valid only if the officer has reasonable suspicion that criminal activity is afoot. Adams, 205 A.3d at 1199-1200; Parker, 161 A.3d at 362. The third category of interaction, arrest or custodial detention, must be supported by probable cause. Adams, 205 A.3d at 1200; Parker, 161 A.3d at 362. Whether an interaction between a private

individual and a police officer is a mere encounter or a seizure is a question of law. Young, 162 A.3d at 529.

Here the trial court did not find that Corporal Olayer had reasonable suspicion of a crime at the time that he engaged Appellant in conversation or that he had reasonable suspicion sufficient to support an investigative detention during his questioning of Appellant until he asked Appellant whether he had been drinking and commented that Appellant smelled of alcohol and had bloodshot eyes. The critical question here therefore is whether the officer's questioning of Appellant up to that point was only a mere encounter from which Appellant was free to walk away.

Where a police officer does nothing more than approach an individual in a public place and briefly ask him questions, the interaction is ordinarily a mere encounter that need not be supported by any suspicion of criminal activity. Young, 162 A.3d at 529. "There is no constitutional provision that prohibits police officers from approaching a citizen in public to make inquiries of them." Id. An interaction between an officer and a citizen is a detention, rather than a mere encounter, however, where the police conduct would communicate to a reasonable person that he was not free to ignore the police inquiry and go about his business. Adams, 205 A.3d at 1200; Commonwealth v. DeHart, 745 A.2d 633, 637 (Pa. Super. 2000). An interaction that begins as a mere encounter may become an investigative

detention if the police conduct becomes too intrusive. Young, 162 A.3d at 529; Commonwealth v. Beasley, 761 A.2d 621, 624 (Pa. Super. 2000).

The mere fact that a citizen ordinarily feels obligated to respond to a police officer, without more, however, is not sufficient to make an interaction a seizure. Commonwealth v. Mathis, 173 A.3d 699, 713 (Pa. 2017).

> [A]ll interactions with law enforcement may be viewed, to some degree, as a show of authority to which people usually accede. However, the free-to-leave test is not to be employed in such a literal manner so as to require application of Fourth Amendment exclusionary remedies to all police encounters. … "Implicit in the introduction of the [officer] and the initial questioning is a show of authority to which the average person encountered will feel obliged to stop and respond. Few will feel that they can walk away or refuse to answer. … [T]he confrontation is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse."

Id. (quoting Wayne R. LaFave, 4 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.4(a) (5th ed. 2016))

Whether a reasonable person would have believed that he was not free leave, making the interaction an investigative detention rather than a mere encounter, must be determined from examining the totality of all the facts and circumstances surrounding the interaction. Mathis, 173 A.3d at 712; Parker, 161 A.3d at 363. Factors to be considered in making this determination include the number of police officers, whether there is physical contact, whether there is police direction of the subject's movements, the demeanor of the officer, the location and timing of the confrontation; and the content of

the officer's statements or questions. Mathis, 173 A.3d at 712; Parker, 161 A.3d at 363; Beasley, 761 A.2d at 624.

Examination of these factors shows that the interaction in this case was a mere encounter and remained a mere encounter and not a seizure up to the time when Corporal Olayer asked Appellant to submit to field sobriety tests. The interaction involved only one officer and there was no physical contact or display of force beyond the fact that the officer was in uniform. There was also no evidence that Corporal Olayer positioned himself so as to block Appellant or did anything that could prevent Appellant from leaving. Compare Cost, 224 A.3d at 652 (interaction was investigative detention where officers retained defendant's identification while they asked him questions); Adams, 205 A.3d at 1200-01 (interaction was investigative detention because officer prevented defendant from getting out of his car); Commonwealth v. Hampton, 204 A.3d 452, 458 (Pa. Super. 2019) (interaction was investigative detention where officer's vehicle blocked defendant from moving his vehicle); Parker, 161 A.3d at 361, 364 (interaction was investigative detention where two officers stopped defendant by stationing their bicycles in front of him and suggested that defendant was involved in criminal activity); DeHart, 745 A.2d at 636-38 (interaction was investigative detention where two officers approached vehicle and positioned themselves one on each side of the vehicle).

Corporal Olayer, moreover, only conversed with Appellant and asked him questions, and did not direct or order Appellant to do anything until after he smelled alcohol on Appellant. Compare Commonwealth v. Singleton, 169 A.3d 79, 83 (Pa. Super. 2017) (interaction was mere encounter even though two officers approached defendant late at night where officers only asked him what was in his bag) with Beasley, 761 A.2d at 625 (mere encounter became investigative detention when officer directed defendant to pick up the backpack he had set down and bring it with him).

Because the evidence showed and the trial court found that Corporal Olayer did nothing more than approach Appellant and ask him questions, this interaction constituted a mere encounter, not a seizure, and did not violate Appellant's rights under the Fourth Amendment or Article 1, Section 8 of the Pennsylvania Constitution. Accordingly, the trial court did not err in denying Appellant's motion to suppress. We therefore affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/2020

- 12 -