J-A05037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEROY PRESTON SMITH | : | |
| | : | |
| Appellant | : | No. 621 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 30, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002812-2021

BEFORE:  DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                                 **FILED APRIL 10, 2024**

Leroy Preston Smith ("Smith") appeals from the judgment of sentence imposed following his conviction for two counts of persons not to possess firearms, and one count of firearms not to be carried without a license.[1]  We affirm.

The relevant factual and procedural history underlying this matter is as follows.  On the night of October 6, 2020, Captain Matthew Goldschmidt, followed by Officers Robert Shaughnessy and Geoffrey Walls, proceeded to the corner of 7th Street and Highland Street in Chester upon receiving a report that a Black male, who was armed with a weapon and wearing a white hooded sweatshirt with red sweatpants, was traveling east on 7th Street near Highland Street.  *See* N.T., 10/28/21, at 9-23.  When the officers arrived at the intersection, they noticed a pedestrian, later identified as Smith, matching

_____

[1] *See* 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

the description of the suspected armed individual. *Id*. at 13. Smith was carrying a small black bag across his shoulder and his back-right pocket was weighed down as if there was a heavy object in it. *Id*. at 13-15. Upon observing the three marked police vehicles coming to a stop on the opposite side of the street, Smith stopped walking and put his hands up in the air. *Id*. at 13-18. As Captain Goldschmidt began to open the door to exit his police vehicle, Smith turned and fled on foot. *Id*. At no point prior to Smith's flight did the captain or other officers physically or verbally address Smith or activate their emergency lights or sirens. *Id*. Officers Shaughnessy and Walls then pursued Smith through a nearby yard in the 2700 block of West 7th Street. *Id*. at 20-21, 31-32. A few minutes later, Smith re-emerged from a yard without the black bag he had been carrying when police initially observed him. *Id*. at 24-25. The officers then searched for and found the black bag in a yard that Smith had run through along with two firearms. *Id*. at 24-25.

Police arrested Smith and charged him with two counts of persons not to possess firearms, and two counts of firearms not to be carried without a license. Smith filed a motion to suppress, and the trial court conducted a suppression hearing at which Captain Goldschmidt testified. Smith's counsel argued that an unlawful investigative detention or stop occurred when police arrived in their patrol vehicles because they lacked reasonable suspicion to detain Smith prior to his flight from the officers. *Id*. at 6-7, 35-36, 37, 39. The court subsequently entered an order denying suppression.

The matter proceeded to a non-jury trial at which Officer Walls testified. The parties stipulated that DNA evidence showed that Smith could be included in the mix of four contributors to the DNA profile obtained from each firearm, and that it was extremely likely that the DNA originated from Smith. At the conclusion of trial, the court found Smith guilty of two counts of persons not to possess firearms, and one count of firearms not to be carried without a license. On January 30, 2023, the trial court sentenced Smith to an aggregate term of six to twelve years in prison. Smith filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Smith raises the following issues for our review:

1. Whether the trial court erred by denying [Smith's] motion to suppress physical evidence where law enforcement lacked reasonable suspicion to stop [Smith] and probable cause to arrest him when he was seized prior to his flight, in violation of the United States and Pennsylvania Constitutions?

2. Whether the evidence was insufficient to establish beyond a reasonable doubt that [Smith] possessed the firearms recovered in a yard in order to sustain his convictions for 18 Pa.C.S.[A.] § 6105 and 18 Pa.C.S.[A.] § 6106?

Smith's Brief at 5.

In his first issue, Smith challenges the trial court's denial of suppression. Our standard of review of an order denying suppression is well-settled:

> When we review the ruling of a suppression court[,] we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and

- 3 -

we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

***Commonwealth v. Hicks***, 208 A.3d 916, 925 (Pa. 2019) (citation omitted). Our scope of review of the suppression court's factual findings is limited to the suppression hearing record. ***See Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa. 2021) (citations omitted). However, as an appellate court, we are not bound by the suppression court's conclusions of law. ***Hicks***, 208 A.3d at 925. Rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary. ***Id***.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect private citizens from unreasonable searches and seizures by government officials. ***See Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000) (citing ***United States v. Mendenhall***, 446 U.S. 544, 551 (1980)). However, not every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protections. ***See Commonwealth v. Adams***, 205 A.3d 1195, 1199 (Pa. 2019). As our Supreme Court has explained:

> We have long recognized three types of interactions that occur between law enforcement and private citizens. The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to

ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person.

*Id*. 1199-2000 (internal citations, some quotations, and brackets omitted).

As explained above, in the absence of a clear directive by police to stop, a person is considered seized only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *See Commonwealth v. Livingstone*, 174 A.3d 609, 619 (Pa. 2017). In evaluating those circumstances, the crucial inquiry is whether the officer restrained a citizens' freedom of movement by means of physical force or a show of authority. *Id*. Factors which suggest that a seizure may have occurred include: the threatening presence of several police officers; the demeanor of the officer; the manner of expression of the officer; the location and timing of the interaction; the display of a weapon by an officer; some physical touching of the citizen by an officer; the use of language

- 5 -

or tone of voice indicating that compliance with the officer's request might be compelled; and the indication by officers that the citizen is suspected of criminal activity. *Id*. at 621; *see also Commonwealth v. Parker*, 161 A.3d 357, 363 (Pa. Super. 2017).

Absent evidence of these factors, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. *See Parker*, 161 A.3d at 363. To be sure, a seizure does not occur when police merely approach a person in public and question the individual or request to see identification. *See Commonwealth v. Lyles*, 97 A.3d 298, 303 (Pa. 2014).

Smith argues that a reasonable person would not have believed he was free to leave upon seeing a three-car caravan of police vehicles stopping alongside him. Although Smith concedes that the officers did not activate their emergency lights or sirens, and that none of the officers made any effort to communicate with him, he nevertheless claims that the caravan of police vehicles was such a clear show of police authority that no reasonable person would feel at liberty to ignore the officers and go about their business. On this basis, Smith contends that an investigative detention occurred as Captain Goldschmidt began to exit his vehicle, and before Smith decided to flee. Smith maintains that the investigative detention was unlawful because, at the time of the detention, the only information available to the officers was that a person matching Smith's description was in possession of a firearm. Smith

asserts that the mere possession of a firearm is an insufficient basis to establish reasonable suspicion of criminal activity so as to support an investigative detention.

The trial court considered Smith's first issue and determined that it lacked merit. The court reasoned:

> The police-citizen initial interface between Captain . . . Goldschmidt and [Smith] . . . was a mere encounter, and not an investigatory detention . . . [Smith] . . . advances an evidence exclusionary theory by presupposing an immediate seizure of . . . Smith by . . . police. The court does not adopt such a presumption and instead finds that when Captain Goldschmidt parked his car, [Smith] voluntarily stopped walking, raised his hands, then fled on foot, all absent interaction with the police, and such facts demonstrate a mere encounter.
>
> * * * *
>
> The record reflects that the police vehicles' emergency lights and sirens were not utilized, and no directing conversation between any of the officers and . . . Smith was had before he took his unprovoked flight, absent any law enforcement intimidation or coercion. Indeed, Captain Goldschmidt's actions of parking his police car along a public street and preparing to alight constitutes no interaction at all, even against the backdrop of three (3) police officers and their vehicles passively parking across 7th Street from . . . Smith.
>
> . . . [T]he standard is that of a reasonable person who can point to indicia that[,] in its sum[,] told that individual that his or her liberty was restrained[,] adopts the protection of the court. It strains credulity to identify a quantum of record facts that translates into an air of coercion, authoritative conduct, and/or an implication that a refusal to respond to the police officials['] simple presence about a public thoroughfare would have brought undesirable consequences.
>
> This court concludes that the initial experience that Captain Goldschmidt and [Smith] had with one another was a mere encounter.

Trial Court Opinion, 6/16/23, at 6-7, 9-10, 18-19 (citations omitted, emphasis in original).

Based on our review of the uncontradicted testimony provided by Captain Goldschmidt at the suppression hearing, we conclude that the trial court's factual findings are amply supported by the suppression record. We further conclude that the trial court's legal conclusions drawn from those facts are free from error. The totality of circumstances presented reflect that, while the officers did arrive in a procession of three marked police vehicles, they did so quietly and without any added show of police authority. Indeed, it was undisputed that none of the officers operated their emergency lights or sirens, nor did they attempt to communicate with Smith in any manner. Although Smith claims that the officers pulled up alongside him, Captain Goldschmidt's testimony reflects that the officers brought their vehicles to a stop on the **_opposite side of the street_** from Smith. These actions simply do not support a determination that the officers used physical force or a show of authority great enough to restrain Smith's freedom of movement. **_See Livingstone_**, 174 A.3d at 619. Accordingly, considering the totality of the circumstances, we conclude that Smith was not subjected to an investigatory detention prior to his decision to flee the scene. Instead, the interaction was a mere

encounter for which no level of suspicion was required. Consequently, Smith's first issue merits no relief.[2]

In his second issue, Smith challenges the sufficiency of the evidence supporting his convictions. Our standard of review of a sufficiency challenge is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa. Super. 2009) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of circumstantial

---

[2] Smith additionally attempted to argue that police lacked probable cause to arrest him. Although Smith's suppression motion included a bald assertion that police lacked probable cause to arrest him, he failed to preserve this issue for our review by raising and developing this claim during the suppression hearing. ***See Commonwealth v. Leaner***, 202 A.3d 749, 765 n.3 (Pa. Super. 2019) (holding that although appellant suggested an issue in his pretrial motion, the issue was waived since he abandoned the claim during the hearing/argument before the court). Smith's counsel did not question Captain Goldschmidt regarding the point in time at which Smith was eventually placed under arrest or the factors which formed the probable cause basis for the arrest. Moreover, counsel made no argument to the suppression court regarding either Smith's eventual arrest or whether police had probable cause to arrest him at that later point in time. ***See*** N.T., 10/28/21, at 6-7, 35-36, 37, 39. Accordingly, this issue is waived.

evidence. *See Commonwealth v. Estepp*, 17 A.3d 939, 943-44 (Pa. Super. 2011).

Section 6105 of the Pennsylvania Crimes Code defines a person not to possess firearms, in relevant part, as follows: "A person who has been convicted of [certain enumerated offenses] shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1).[3]

To convict a defendant of carrying a firearm without a license under section 6106, the Commonwealth must show that the defendant "carrie[d] a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license." 18 Pa.C.S.A. § 6106(a).

When a firearm is not discovered on a defendant's person, or in their actual possession, the Commonwealth may prove the defendant had constructive possession of the firearm. As this Court has explained:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.

---

[3] At trial, Smith stipulated that because he was previously convicted of robbery in 2012, he was ineligible to possess a firearm pursuant to 6105(a)(1). *See* N.T., 11/15/22, at 22.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013) (citation omitted). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted).

Smith argues that the Commonwealth did not prove that he actually or constructively possessed the firearms that were found in the yard through which he fled. Smith claims that because the officers never observed him with a weapon, the evidence was insufficient to prove that he actually possessed either firearm. Smith also contends that the evidence was insufficient to show that he constructively possessed the firearms because the only evidence connecting him to the firearms was an officer's observation of Smith's pocket being weighed down, Smith's flight, and DNA evidence showing that Smith was a likely contributor to the mixture profile taken from each firearm. Smith points out that the trial record is not clear as to the "exact location" where the firearms were found by police because Officer Walls could not recall the specific address for the yard in the 2700 block of West 7th Street where the firearms were located. Smith's Brief at 24. Smith asserts that Officer Walls

merely testified that the green cooler[4] and the firearms were "relatively close."

**Id**. (citing N.T., 11/15/22, at 18).

The trial court considered Smith's second issue and determined that it lacked merit. Specifically, the court reasoned:

> The record is replete with uncontradicted facts which taken together give rise to reasonable inferences legally supporting [Smith's] convictions . . .
>
> The Commonwealth proffered overwhelming DNA evidence in its case after taking biological samples from . . . Smith and the two (2) firearms. **See** Commonwealth Exhibit C-2 — DNA Analysis dated November 16, 2021. N.T.[,] 11/15/22[, at] 13. Direct evidence and circumstantially reasoned inferences established [Smith] possessed each gun, a locational and compressed timing nexus clearly existed between . . . Smith and the weapons. Unprovoked flight, the circuitous running route, the immediate proximity of the firearms guns [*sic*] recovery point to the area from which [Smith] had just fled, and to his discarded green cooler, along with [Smith's] DNA "match" to the firearm, combined to a totality of the circumstances of the trial record that as a matter of law . . . Smith's unlawful possession of the two (2) handguns was proven beyond a reasonable doubt.
>
> Although grounded on a combination of direct and circumstantial evidence, the prosecution's trial presentation when viewed under the long-settled standard appliable [*sic*] to a sufficiency challenge on appeal readily reveals [Smith's] now attacked convictions as a matter of law are sound.

Trial Court Opinion, 6/16/23, at 37-38.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to

---

[4] At the suppression hearing, Captain Goldschmidt testified that Smith was carrying a small black bag prior to his flight from police. **See** N.T., 10/28/21, at 13-15. However, at trial, Officer Walls testified that upon closer inspection, the bag was, in fact, a small green cooler. **See** N.T., 11/15/22, at 15-18.

sustain Smith's convictions under sections 6105 and 6106. Officer Walls' testimony at trial established that Smith fled from police into a confined geographic area within the 2700 block of West 7th Street, and in doing so, ran through rear yards on the "even side of the street" of that block. N.T., 11/15/22, at 15. Officer Walls further testified that the green cooler Smith was carrying at the time he fled from police was found within minutes of his apprehension, in a rear yard on the even side of the 2700 block of West 7th Street. *Id*. at 17. According to Officer Walls, the cooler was found "relatively close" to the two firearms. *Id*. at 18. While Officer Walls was unable to recall with certainty the specific street number for the yard in which the cooler and firearms were found, he indicated that he "believe[d]" the address was 2702 West 7th Street. *Id*. at 17. Moreover, Smith stipulated that he was ineligible to possess a firearm and further stipulated to the DNA test results which showed that it was extremely likely that he was one of the four contributors to the DNA profile mix taken from each firearm. *See* N.T., 11/15/22, at 20-22; *see also* Commonwealth Exhibit C-2 — DNA Analysis, 11/16/21 (concluding that it is 5.2 octillion times more likely that the DNA on one of the firearms originated from Smith, and 10 nonillion times more likely that the DNA on the other firearm originated from Smith).

Given the confined flight path through rear yards that Smith took when attempting to flee from police, the discovery of the cooler and the firearms in one of those yards, the close proximity of the firearms to the green cooler that Smith had been carrying, and the overwhelming DNA evidence showing the

extreme likelihood that it was Smith's DNA on the recovered firearms, we conclude that the evidence was sufficient to support an inference that it was more likely than not that Smith constructively possessed the firearms. Accordingly, his sufficiency challenge merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2024