J-A18036-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: D.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1291 WDA 2019 |

Appeal from the Order Dated July 22, 2019
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0001074-2019

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    FILED DECEMBER 24, 2020

Appellant D.W. appeals from the dispositional order entered following his adjudication of delinquency for acts constituting carrying a firearm without a license and possession of a firearm by a minor.[1]  Appellant argues that the juvenile court erred in denying his motion to suppress.  We affirm.

We summarize the testimony presented at the suppression hearing as follows.  On July 12, 2019, Pittsburgh Police Officer Lucas Burdette was on patrol with two other officers in the Homewood section of Pittsburgh.  N.T. Suppression Hr'g, 7/9/19, at 8.  The police were wearing plain clothes and operating an unmarked police vehicle.[2]  Id.  At that time, while "driving slowly" through a parking lot, Officer Burdette observed a "Dodge Magnum

_____

[1] 18 Pa.C.S. §§ 6106(a)(1) and 6110.1(a).

[2] Although the police were not in full uniform, one of the officers was wearing a tactical vest emblazoned with the word "police" in bright yellow letters.  See N.T. Suppression Hr'g at 8.

parked, occupied by five individuals with another individual standing outside of the Dodge." Id. at 9. Officer Burdette stated that the individual outside of the car saw the police approaching, and that

> [a]s we got closer to the car, the guy standing outside of the car kind of bent over to talk to the people that were inside the car, and I took that as he was telling the people inside the car that we were approaching, [that] the police were in the area.

Id. At that point, Officer Burdette observed the occupants of the vehicle begin to "reach around frantically inside the vehicle." Id. at 10. Based on Officer Burdette's training, education, and expertise, he believed that the occupants of the vehicle "could be trying to conceal a weapon or contraband of some sort." Id. at 10-11. At that time, the officers exited their vehicle, displayed their badges, and identified themselves by stating "Pittsburgh Police." Id. at 12.

Officer Burdette testified that, as he approached the driver's side of the vehicle, he saw a rear passenger "holding a marijuana cigar" (also known as a "blunt") and noticed an "overwhelming smell of marijuana emanating from the vehicle." Id. Officer Burdette first spoke with Appellant, who was sitting in the driver's seat. Id. At that time, Officer Burdette explained:

> I observed him to reach towards his waist several times, and I instructed everyone in the vehicle to put their hands in front of them where I could see them.
>
> I had to tell [Appellant] several times to keep his hands on the steering wheel and to stop reaching for his waist.

Id.  Officer Burdette stated that, based on his training, education, and experience, Appellant's behavior "indicated that he could possibly be concealing a firearm."  Id. at 14.  Given these observations, Officer Burdette stated that he was "concerned for his safety."  Id.  Therefore, Officer Burdette testified:

> I asked [Appellant] to step out of the vehicle.  I noticed a large unnatural bulge on his right side where I saw him reaching.  I conducted a pat down and immediately felt [what] I recognized as a handgun.

Id. at 13.  After recovering a firearm from Appellant, the officers then searched the remaining occupants of the vehicle.  Id. at 18.

Ultimately, the Commonwealth filed a delinquency petition alleging that Appellant committed acts constituting carrying a firearm without a license and possession of a firearm by a minor.

On June 21, 2019, Appellant filed a motion to suppress the handgun, arguing that it was obtained during an illegal search and seizure.  The juvenile court conducted a suppression hearing on July 9, 2019.  At the hearing, the Commonwealth called Officer Burdette, who testified to the facts as set forth above.

Appellant also presented testimony from three witnesses, K.W., T.H., and J.J., who were in Appellant's vehicle when the incident occurred.  All three witnesses stated that the police had their guns drawn when they exited their patrol vehicle and approached Appellant's car.  See id. at 23-24, 33-34, 46.

Additionally, J.J. confirmed that he was in the backseat of Appellant's vehicle holding a blunt when the police approached. Id. at 45.

Based on this testimony, Appellant argued that it "was more than a mere encounter at the point where [the officers] start[ed] walking up to [his] car with their guns drawn." Id. at 54. Therefore, because the officers had not yet observed the conduct forming the basis of their reasonable suspicion, Appellant argued that the "stop" was unlawful. Id.

Thereafter, the juvenile court made the following findings of fact:

> In regard to this motion to suppress, first of all, we're looking at a mere encounter or an investigative detention status. Obviously, these police officer[s] were on patrol in Homewood; not whether it's a high-crime area or not, that's not an issue here today, but they did approach the car, which is well within their rights.
>
> I do not believe the testimony that [the police] had the firearms drawn at that time. I believe they approached the car, as the officer indicated, they smelled marijuana. At that time [they] felt there was unlawful activity afoot, which gives them further cause to continue their search at that time. All individuals were searched.
>
> Testimony from the three defense witnesses was not that they were patted down twice. One was patted once. One was patted twice. The other one indicated he was patted down three time[s].
>
> One also indicated that subsequently right after the first pat down of [Appellant], the gun was found. The other indicated it had to be [twenty] minutes later. Their testimony was not consistent at all and not believable by this [c]ourt as well. In regard to the motion to suppress, that is denied at this time.

Id. at 60-61.

The juvenile court adjudicated Appellant delinquent that same day. Id. at 81. On July 22, 2019, the juvenile court conducted a dispositional hearing and ordered Appellant to attend Abraxas.

On August 22, 2019, Appellant timely filed a notice of appeal. He subsequently filed a timely court-ordered Pa.R.A.P. 1925(b) statement challenging the juvenile court's denial of his suppression motion. The juvenile court issued a Rule 1925(a) opinion in which it referred this Court to the factual findings and analysis set forth at the suppression hearing.[3] See Trial Ct. Op., 12/2/19, at 8. The juvenile court briefly noted that the "testimony presented by [Appellant] was inconsistent and this [c]ourt believed that the encounter raised to the level of investigatory detention." Id. at 9. However, the juvenile court did not specifically identify the moment when the mere encounter became a seizure.

On appeal, Appellant raises the following issue:

Although the juvenile court correctly concluded that the police immediately subjected [Appellant] to an investigative detention, whether the juvenile court erred in concluding that such seizure was supported by reasonable suspicion, based on specific and articulable facts, that criminal activity was afoot?

_____

[3] In its Rule 1925(a) opinion, the juvenile court incorrectly concluded that Appellant's suppression claims were "moot" because he did not appeal from the order denying suppression. See In re J.D., 798 A.2d 210, 211 n.1 (Pa. Super. 2002) (stating that, in a juvenile adjudication, an appeal properly lies from the dispositional order, not from the order denying suppression). However, because the juvenile court adequately set forth its findings of fact on the record at the suppression hearing, the absence of further analysis in the Rule 1925(a) opinion does not impede our review.

Appellant's Brief at 5.

First, Appellant argues that the juvenile court properly concluded that a seizure occurred when the officers exited their patrol vehicle. Id. at 28. In support, Appellant notes that he was approached by "three police officers who were wearing law enforcement clothing" who "promptly identified themselves as law enforcement." Id. at 28. Further, Appellant asserts that the officers' "clothing was not that of regular beat officers," as one officer "was wearing a 'tactical vest[,]'" and there was "nothing to suggest that this was just a run-of-the-mill, informal approach of a citizen by the police." Id.

Second, Appellant contends that, because a seizure occurred at the moment the police exited their patrol car, the officers were required to develop reasonable suspicion before approaching Appellant's vehicle. Id. at 31. Therefore, although Appellant acknowledges that Officer Burdette smelled marijuana while he was walking towards the driver's side of the vehicle, he argues that "the smell of marijuana was not yet a factor available to Officer Burdette, [and] it could not, as a matter of law, be considered in the determination of reasonable suspicion." Id. at 31 (citing Commonwealth v. Mackey, 177 A.3d 221, 228 (Pa. Super. 2017)). Appellant argues that, "[m]oreover, at the time of the seizure[,] Officer Burdette never actually saw a firearm or drugs; in point of fact, he saw no objects at all." Id. Therefore, Appellant concludes that the officers seized "[Appellant] and his companions based solely on their pre-stop movements," which, "without something

significantly more, do not provide reasonable suspicion to seize and/or search an individual." Id. at 21.

The Commonwealth asserts that "Officer Burdette observed furtive movements by all five occupants of the vehicle [A]ppellant was operating in a high crime area, and [A]ppellant continually reached toward his waist and refused to comply with directives. These circumstances warranted a Terry[4] protective frisk." Commonwealth's Brief at 15. Further, the Commonwealth asserts that, "during this encounter, police detected the odor of marijuana, which then provided them with cause to conduct searches." Id. The Commonwealth concludes that, "[a]s the detention was lawful, the juvenile court properly concluded that the evidence obtained as a result thereof should not be suppressed." Id. at 7-8.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010). "Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.'" Id. (quoting Commonwealth v. Mistler, 912 A.2d 1265, 1269 (Pa. 2006)).

_____

[4] Terry v. Ohio, 392 U.S. 1 (1968).

Our "scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion." In re N.M., 222 A.3d 759, 770 (Pa. Super. 2019) (citation omitted), appeal denied, 229 A.3d 562 (Pa. 2020). In addition, because the Commonwealth prevailed on this issue before the suppression court, we consider only the Commonwealth's evidence and so much of the defendant's evidence "as remains uncontradicted when read in the context of the record as a whole." Commonwealth v. Brown, 64 A.3d 1101, 1104 (Pa. Super. 2013) (citation omitted). We may reverse only if the legal conclusions drawn from the facts are in error. Id. (citation omitted).

It is well settled that "Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police." Commonwealth v. Lyles, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Pakacki, 901 A.2d 983, 987 (Pa. 2006) (citations omitted).

"In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. We are bound by the suppression court's factual findings, if supported by the record . . . ." Lyles, 97 A.3d at 302 (citations omitted). However, the issue of whether "a seizure occurred [] is a pure question of law subject to plenary review." Id. (citation omitted).

> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

Commonwealth v. Adams, 205 A.3d 1195, 1200 (Pa. 2019) (citations and some formatting omitted), cert. denied, --- U.S. ---, 140 S.Ct. 2703 (2020).

"A mere encounter may escalate into an investigatory detention or seizure if police action becomes too intrusive." Commonwealth v. Young, 162 A.3d 524, 529 (Pa. Super. 2017) (citation omitted). In considering the totality of the circumstances, we must focus on "whether the suspect has in some way been restrained by physical force or show of coercive authority." Id. (citation omitted). This Court has provided a non-exhaustive list of relevant factors, including:

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity;

the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

Commonwealth v. Collins, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (en banc) (citation omitted).

"Although no single factor controls our analysis, both the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure." Young, 162 A.3d at 529 (citation omitted and some formatting altered); see also Commonwealth v. Au, 42 A.3d 1002, 1008-09 (Pa. 2012) (concluding that no seizure occurred when an officer pulled behind a parked vehicle and did not use emergency lights, did not block the defendant's car, did not draw a weapon, and did not issue a command).

Importantly, this Court has explained that

the relevant inquiry is whether an officer possesses reasonable suspicion of criminal activity before initiating the detention. While experience teaches that the reality of these encounters often does not yield sharp constitutional lines, the prescribed constitutional analysis demands that at the moment an encounter moves from a consensual "mere encounter" to an investigative detention, police must already have the requisite reasonable suspicion to support that detention—reasonable suspicion cannot be based on information discovered after the detention has begun. A trial court must identify this moment to frame its analysis of the constitutionality of police conduct.

Mackey, 177 A.3d at 232-33 (citations omitted and formatting altered); see also Commonwealth v. Walls, 206 A.3d 537, 541-42 (Pa. Super. 2019)

(stating that, "[i]n order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot."), appeal denied, 218 A.3d 393 (Pa. 2019).

Here, the juvenile court did not identify the precise moment when the seizure occurred. See N.T. Suppression Hr'g at 60-61; see also Trial Ct. Op. at 8. Nonetheless, Officer Burdette testified that the officers did not have their weapons drawn when they exited the patrol car and approached Appellant's vehicle. See N.T. Suppression Hr'g at 60. Further, although the officers identified themselves as police officers, Officer Burdette testified that they did not make any commands while they were approaching Appellant's vehicle. See id. at 12. The juvenile court credited Officer Burdette's testimony about the initial encounter, see id. at 60, but rejected the testimony of Appellant's witnesses as "inconsistent." See Trial Ct. Op. at 9.

Therefore, based on these factual findings, which are supported by the record, we conclude that up until the point that Officer Burdette instructed Appellant and the other occupants to "put their hands up," the interaction was a mere encounter for which no level of suspicion was required. See Young, 162 A.3d at 529; cf. Commonwealth v. McClease, 750 A.2d 320, 325 (Pa. Super. 2000) (concluding that an officer's "show of authority in stating 'Police Officer. Stay in your vehicle,' would cause a reasonable person to believe that he or she was not free to leave" and that, "upon utterance of this order, [the defendant] was seized and an investigative detention commenced"). Accordingly, Appellant is not entitled to relief on his claim that he was detained

from the moment the police exited the unmarked patrol car. See Young, 162 A.3d at 529; see also Brown, 64 A.3d at 1104.

When Officer Burdette instructed Appellant and the other occupants to put their hands up, the interaction became an investigative detention, which required reasonable suspicion. See Young, 162 A.3d at 529; see also Collins, 950 A.2d at 1047 n.6. However, because Officer Burdette saw the rear passenger smoking a marijuana cigar, smelled marijuana, and saw Appellant reaching towards his waistband during a lawful encounter, he properly relied on those observations when developing reasonable suspicion to conduct the subsequent seizure. See Mackey, 177 A.3d at 232-33. Therefore, the juvenile court properly considered those observations when evaluating whether Officer Burdette's had reasonable suspicion to justify a seizure. See id. Accordingly, Appellant is not entitled to relief.

Dispositional order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2020