J. S15023/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | |
| EDWARD YOUNG, | : | |
| | : | |
| Appellee | : | |
| | : | No. 573 EDA 2016 |

Appeal from the Order January 14, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010477-2015

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                     **FILED APRIL 11, 2017**

The Commonwealth appeals from the January 14, 2016 Order entered in the Philadelphia County Court of Common Pleas granting the Motion to Suppress filed by Appellee, Edward Young. After careful review, we conclude that the trial court erred as a matter of law when it concluded that police officers lacked reasonable suspicion to conduct an investigatory detention of Appellee because: (i) Appellee and three officers were engaged in a mere encounter when Appellee volunteered that he had marijuana on his person and began reaching for his pocket; and (ii) as soon as Appellee admitted to being in possession of marijuana, officers had probable cause to arrest Appellee and to search him incident to that arrest. Accordingly, we reverse the trial court's Order and remand for further proceedings consistent with this Memorandum.

On October 2, 2015, Appellee was arrested and charged with Carrying a Firearm Without a License, Possession of Marijuana, and Carrying a Firearm on Public Streets in Philadelphia.[1]

Appellee filed a Motion to Suppress, arguing that he had been subject to an illegal detention and arrest. On January 14, 2016, the trial court heard testimony on the Motion to Suppress. In its Pa.R.A.P. 1925(a) Opinion, the trial court detailed the often-repetitive testimony adduced at the hearing. The portions relevant to our disposition are as follows:

> Philadelphia Police Officer, Antonio Nieves, assigned to the 39th District, testified that on October 2, 2015, at approximately 9:00 p.m., he performed his tour of duty at 1413 West Erie Avenue in the city of Philadelphia. Officer Nieves stated that he, along with his partners, Officers Bradley and Mertha, were patrolling this location because 1413 Erie Avenue is a known location for narcotics sales. He further noted that he receives constant complaints for narcotics sales and has made numerous arrests at the location. It was at this location that Officer Nieves, while driving in a patrol car, first came into contact with [Appellee]. He observed [Appellee] standing in front of a Chinese store in the rain at 1413 Erie Avenue from his vehicle and identified [Appellee] in court. Officer Nieves testified that he was patrolling the area and looking at the front of the store to see who was there. After Officer Nieves drove by a few times, he noticed [Appellee] was still standing in the rain.
>
> Approximately an hour passed before Officer Nieves and his two partners returned, got out of the unmarked patrol car, and identified themselves as police officers to [Appellee] since they were not wearing their uniforms. After Officer Nieves approached [Appellee], he asked him what he was doing. [Appellee] replied that he was waiting for a bus. Officer Nieves stated to the court that he saw buses come and leave at this

---

[1] 18 Pa.C.S. § 6106(a)(1); 35 P.S. 780-113(a)(31); and 18 Pa.C.S. 6108, respectively.

location when he went by a few times. Officer Nieves then asked [Appellee] if he had anything on his person that could harm himself or his partners. [Appellee] responded by saying, "No.... All I have is two bags of weed."

* * *

Subsequent to asking [Appellee] what he was doing there, Officer Nieves asked if he had anything on his person that could hurt Officer Nieves or his partners. Officer Nieves explained that he asked this question for officer safety. [Appellee] then responded by saying that he had two bags of weed and then started to reach for his pocket. Officer Nieves testified that he then told [Appellee] not to reach towards his pocket and proceeded to reach into [Appellee's] pocket himself. When Officer Nieves reached into [Appellee's] right coat pocket to retrieve the marijuana, he recovered a black Ruger .380 handgun, with a serial number 37332000. Officer Nieves stated that the handgun was loaded with six live rounds in the magazine and one round in the chamber and later placed on Property Receipt No. 3222254. He noted that the handgun was recovered from the pocket [Appellee] attempted to reach towards.

Officer Nieves testified that after he recovered the handgun, he observed Officer Mertha reach into the Defendant's pants pocket in his presence and recover marijuana. The recovered marijuana was later placed on Property Receipt No. 3222255. Officer Nieves stated that he has made over ten (10) arrests in the West Erie Avenue area including a firearms arrest around the corner on Broad Street months apart from the instant matter. Officer Nieves described the area as one with "a lot of narcotics sales going on. It is very violent in that area and there have been numerous shootings and homicides in that general area."

Trial Court Opinion, filed 6/21/16, at 1-3 (references to the record omitted).

At the close of the hearing, the trial court granted Appellee's Motion to Suppress.

The Commonwealth filed a timely Notice of Appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

Did the lower court err by suppressing defendant's gun on the ground that police had no reasonable suspicion of criminal activity where – upon being approached and briefly questioned at a drug sales location in a violent high crime area – [Appellee] said he had "weed" and reached for his pocket?

Commonwealth's Brief at 3.

Our standard of review applicable to suppression determinations is well-settled.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Nester***, 709 A.2d 879, 880-81 (Pa. 1998).

The trial court's findings of facts are not at issue in the instant appeal. Rather, the Commonwealth argues that the trial court erred in its conclusions of law because police officers had probable cause to arrest Appellee for possession of a controlled substance or, at a minimum, had reasonable suspicion to detain Appellee for investigation and conduct a frisk. Commonwealth's Brief at 11-12. After careful review, we agree.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). "To

secure the right of citizens to be free from . . . [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." **Commonwealth v. Beasley**, 761 A.2d 621, 624 (Pa. Super. 2000). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. **See Commonwealth v. Fuller**, 940 A.2d 476, 478 (Pa. Super. 2007).

> This Court has explained the three levels of interaction as follows:
>
> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

**Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa. Super. 2005) (citation omitted).

In the instant case, the trial court found that the interaction between officers and Appellee rose to the level of an investigative detention because "they made a show of authority by having three officers stand in front of

him, during questioning, commanded [Appellee] to stop reaching for his pocket, and searched his pockets." Trial Court Opinion at 8.

The trial court's analysis ignores the intervening acts of Appellee. Before officers ever "commanded [Appellee] to stop reaching for his pocket" or "searched his pockets[,]" Appellee voluntarily told officers that he had marijuana on his person. As soon as Appellee volunteered that information, police had probable cause to arrest Appellee for possession of a controlled substance. **See Commonwealth v. Stokes**, 389 A.2d 74, 78 (Pa. 1978) (noting that "an admission *per se* is inherently reliable evidence" sufficient to establish probable cause to arrest, but holding that "an admission transmitted through an informant is only as reliable as its conduit is trustworthy."); **Commonwealth v. Kondash**, 808 A.2d 943, 949 (Pa. Super. 2002) (defendant's admission that he was in possession of hypodermic needles "provided probable cause to believe that the pouch contained illegal paraphernalia subject to immediate lawful seizure."). The officers were also authorized to search him incident to that arrest or immediately prior to placing him under arrest. **See Commonwealth v. Trenge**, 451 A.2d 701, 710 n.8 (Pa. Super. 1982) ("[A] search conducted immediately prior to an arrest is as valid as a search conducted subsequent and incident to the arrest provided the officer had probable cause to arrest prior to the search as long as the contraband discovered in the search is not used as justification or probable cause for the arrest.").

The question is, therefore, whether the interaction that occurred **before** Appellee admitted possession of marijuana constituted a mere encounter or rose to the level of an investigative detention.

A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carr[ies] no official compulsion on the part of the citizen to stop or to respond." **Fuller, supra** at 479 (citation omitted). There is no constitutional provision that prohibits police officers from approaching a citizen in public to make inquiries of them. **See Beasley, supra** at 624.

A mere encounter may escalate into an investigatory detention or seizure if police action becomes too intrusive. **Id.** "In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. We are bound by the suppression court's factual findings, if supported by the record; however, the question presented—whether a seizure occurred—is a pure question of law subject to plenary review." **Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

When applying the totality of the circumstances test, our inquiry focuses "on whether the suspect has in some way been restrained by physical force or show of coercive authority." **Id.** (citation omitted). Although no single factor controls our analysis, "[b]oth the United States and Pennsylvania Supreme Courts have held that the approach of a police officer

followed by questioning does not constitute a seizure." ***Commonwealth v. Coleman***, 19 A.3d 1111, 1116 (Pa. Super. 2011) (citations omitted). This is true even if the officer asks the individual whether he is carrying a weapon. ***Id.*** (holding that officer was engaged in a mere encounter when he approached the defendant and asked him if he had a gun). This is also true if multiple officers approach an individual to ask him questions. ***Lyles, supra*** at 303-04 (finding a mere encounter where two uniformed police officers arrived in an unmarked police car, approached the defendant, and asked for identification). In ***Lyles***, our Supreme Court emphasized the fact that, although multiple officers approached the defendant, asked him what he was doing there, and requested his identification, there were no "circumstances of restraint of liberty, physical force, show of authority, or some level of coercion beyond the officer's mere employment, conveying a demand for compliance or that there will be tangible consequences from a refusal." ***Id.*** at 304.

In the instant case, Officer Nieves and his two partners exited an unmarked patrol car and approached Appellee on a public sidewalk. N.T., 1/14/16, at 8. The three officers were not in uniform, so they identified themselves to Appellee as police officers. ***Id.*** The three officers did not surround Appellee, but instead all three stood in front of him. ***Id.*** at 18. They then asked him two questions: first, Officer Nieves asked Appellee "what he was doing." ***Id.*** at 8. Next, concerned for his safety, Officer

Nieves asked Appellee "if he had anything on his person that could harm [Officer Nieves] or [his] coworkers[.]" *Id.* at 8, 10. At that point, Appellee stated no, but that he was in possession of "two bags of weed." *Id.* at 8.

It is clear to this Court that, based on the case law discussed *supra*, Officer Nieves and his partners were free to approach Appellee on a public street and ask him questions. The two brief questions that Officer Nieves asked constituted a mere encounter, and neither the presence of other officers nor his question about Appellee having anything "that could harm" the officers turned this mere encounter into an investigatory detention. Nor did the trial court find that any other circumstances **prior to Appellee's admission** constituted "[a] restraint of liberty, physical force, show of authority, or some level of coercion beyond the officer's mere employment, conveying a demand for compliance or that there will be tangible consequences from a refusal." *Lyles, supra* at 304.

Moreover, it is clear from the record and the factual findings of the trial court that, during the mere encounter, Appellee admitted that he was in possession of two bags of marijuana. The subsequent seizure of Appellee and search of his person were properly supported by probable cause.

Therefore, the trial court erred as a matter of law when it granted Appellee's Motion to Suppress. Accordingly, we reverse the trial court's Order and remand for further proceedings consistent with this Memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_ (signature)

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2017