J-S14026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF
PENNSYLVANIA

      v.

DWAYNE WILSON

            Appellant

:
:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2804 EDA 2016

Appeal from the Judgment of Sentence June 9, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007015-2014

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 01, 2018**

Appellant Dwayne Wilson appeals from the judgment of sentence imposed following his convictions for carrying a firearm without a license and carrying a firearm in public in Philadelphia.[1] Wilson argues that the trial court erred in denying his motion to suppress evidence. We affirm.

Wilson was arrested in 2014 and charged with the above-listed offenses. He filed an Omnibus Pre-Trial Motion that included a Motion to Suppress a firearm recovered on the date of his arrest. The trial court held a hearing on the Motion at which the Commonwealth presented the testimony of Officers Melvin Victor and Wayne Durham of the Philadelphia Police Department. Officer Durham testified that they were on duty on May 29, 2016, when they

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6106 and 6108, respectively.

received a complaint over the radio that a male and female were smoking narcotics inside a white car near 5529 Osceola Street. Philadelphia police receive a large number of "priority" calls to respond to this area, "from narcotics use to narcotics sales to person with weapons." N.T., 1/30/15, at 11-12. Within two to three minutes, the officers arrived at the address, which is a single-occupancy house, and saw a shallow parking lot adjacent to the house and abutting the street. They observed a white car in the lot, occupied by a man and woman, facing the street. Its headlights, taillights, and engine of the vehicle were off, and its windows were closed. The officers saw no other white vehicles in the area.

The officers parked their vehicle along the curb in front of the lot. Officer Durham testified that the white car was facing the driver's door of the police car, in a "T" formation, such that the police vehicle "sort of" blocked the white car from leaving. *Id.* at 18. He also stated that the back of the white car was close to a fence.

Officer Durham said that he and Officer Victor then got out of their car, and Officer Victor approached the driver's side door of the white car, where the man – later identified as Wilson – was sitting. Officer Durham approached the passenger's side door, where the woman was sitting. As they approached, the officers noticed Wilson "reaching towards the center console with a dipping

motion." Officer Victor tapped on the driver's window, and Wilson opened the door and stood up.[2]

Once Wilson opened the door, both officers smelled the odor of burnt marijuana, which prompted them to frisk Wilson and place him in the back of the white car, remove the woman from the front of the vehicle and frisk her, and search the car's passenger compartment. Officer Durham testified that he "recovered a loaded shotgun that was lodged between the center console and the driver's seat, and partially covered with a towel. The officers found no drugs in the car, although Officer Durham testified he observed "the inside of cigars and wrappings" in the vehicle, which, in his experience, indicated marijuana use. *Id.* at 21-22.

The court concluded that the police officers' vehicle did not impede the white car from leaving the lot, and denied the Motion to Suppress. *Id.* at 56. The court then immediately held a bench trial, at which the evidence pertaining to the recovery of the shotgun was admitted. The court found Wilson guilty,[3] and sentenced him on June 9, 2015, to an aggregate sentence of time served to 23 months' incarceration followed by three years' probation.

_____

[2] Testimony differed as to whether the officers had requested that Wilson exit the vehicle. However, the trial court credited this version of the testimony.

[3] Following his bench trial, Wilson filed a Motion for Extraordinary Relief. The court granted the motion and heard new character evidence on April 8, 2015, but reaffirmed the prior verdict.

Wilson presents one issue on appeal:[4]

Did not the court err in denying [Wilson's] [M]otion to [S]uppress evidence in that the police detained [Wilson] in his car and then compelled him to exit his car in the absence of reasonable suspicion or probable cause, leading to the unlawful seizure of a gun?

Wilson's Br. at 3.

On review of an order denying a motion to suppress, we "determine whether the certified record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011). In making this assessment, we "consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Id.* If the record supports the factual findings of the suppression court, we reverse "only if there is an error in the legal conclusions drawn from those factual findings." *Id.* Whether an officer's undisputed testimony reflects that a seizure occurred is a question of law. *Commonwealth v. Au*, 42 A.3d 1002, 1006 (Pa. 2012).

Wilson argues that the trial court erroneously denied his motion to suppress because he was seized when the police parked in such way as to, according to Wilson, block his vehicle from leaving. Wilson contends that this

---

[4] Wilson did not initially file a direct appeal, but on May 13, 2016, he filed a petition under the Post Conviction Relief Act ("PCRA"), which resulted in the trial court's reinstatement of Wilson's appellate rights *nunc pro tunc*.

action rendered the interaction an investigative detention requiring reasonable suspicion. Wilson further argues that the police lacked reasonable suspicion because the only articulable basis for their suspicion at that point was the uncorroborated radio call. Wilson does not argue that the police lacked reasonable suspicion once he opened the car door.

"The Fourth Amendment to the United States Constitution and Article 1, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. Young**, 162 A.3d 524, 527 (Pa.Super. 2017). Citizens' interactions with police fall into one of three categories: (1) mere encounters, (2) investigative detentions, or (3) custodial arrests. **Id.** at 528.A "mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen." **Id.** A mere encounter does not require the subject to stop or respond, and does not require the police to have any level of suspicion. **Id.** at 529. An "investigative detention" "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest." **Commonwealth v. Fuller**, 940 A.2d 476, 479 (Pa.Super. 2007). An investigative detention must be supported by reasonable suspicion of criminal activity. **Id.** A "custodial detention" must be supported by probable cause. **Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014).

An investigative detention occurs "[w]hen a police officer temporarily detains an individual by means of physical force or a show of authority."

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1203 (Pa. Super. 2016). "To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201-02 (Pa.Super. 2002). Factors relevant to this analysis include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Commonwealth v. Livingstone*, 174 A.3d 609, 621 (Pa. 2017) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). However, no single factor dictates "the ultimate conclusion as to whether a seizure has occurred." *Id.* (quoting *Commonwealth v. Strickler*, 757 A.2d 884, 890 (2000)).

However, a seizure does not occur when officers merely approach a person in public and request information, so long as the officers' behavior does not "convey a message that compliance with their requests is required." *Lyles*, 97 A.3d at 303 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). An officer may thus approach a parked vehicle to request information from the occupants without having any level of suspicion. *Id.*

Here, the trial court explained in its Pa.R.A.P. 1925(a) opinion that it denied the suppression motion because, until Officer Victor knocked on the driver's side window, the interaction was a mere encounter.[5] The record supports that conclusion. No testimony or other evidence suggested that the officers conducted themselves so as to "convey a message that compliance with their requests [was] required." *Id.* Only a single officer approached the white car, the officers did not activate the overhead lights on their vehicle, they did not draw their weapons or make any other show of force, and their vehicle did not block the white car from leaving the lot. Rather, at most, according to Officer Durham's testimony, the police vehicle only partially blocked the white car's exit from the lot, and nothing else in the record suggests that at that point, Wilson reasonably believed he was not free to leave. The record thus supports trial court's factual findings and its legal conclusions are not erroneous. We therefore affirm the order denying Wilson's Motion to Suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/18

---

[5] Trial Court Opinion, filed March 7, 2017, at 10.

- 7 -