J-A23021-22

2022 PA Super 213

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
        Appellant   :
  :
  :
  :
        v.   :
  :
  :
  :
DWAYNE CUNNINGHAM   :   No. 86 MDA 2022

Appeal from the Order Entered December 8, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000856-2021

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY McCAFFERY, J.:     **FILED DECEMBER 13, 2022**

Because I conclude Officer Bucek had no reasonable suspicion to detain Appellee or to suspect he was armed and dangerous to justify a **Terry**[1] frisk, I am compelled to dissent.

At the suppression hearing, Minersville Borough Police Officer Michael Bucek testified to the following sequence of events on the night of Appellee's arrest. On April 5, 2021, at approximately 10:30 p.m., Officer Bucek and his partner[2] were driving down the 200 block of North Street in Minersville when he "detected an odor of [burnt] marijuana" through the open windows in his

---

[*] Former Justice specially assigned to the Superior Court.

[1] **Terry v. Ohio**, 329 U.S. 1 (1969).

[2] Officer Bucek did not provide the name of his partner, but stated he no longer worked for the Minersville Borough Police Department. **See** N.T., 10/27/21, at 6.

vehicle. N.T. at 3-5. Officer Bucek "scanned the area" to determine the source of the smell, and noticed "three hooded males[,]" one of whom was later identified as Appellee. *Id.* at 4-5. Officer Bucek stated that as he approached the men, "the odor of burned marijuana . . . grew stronger" so he parked and exited his vehicle. *Id.* at 5. The Officer did not see any smoke, cigarettes, or vape pens while observing the men. *Id.* at 12.

Officer Bucek testified that after exiting his car he began to approach the men, but they crossed the street to "avoid[ ] contact" with him. N.T. at 15. He crossed the street to follow them and said, "Hey, man, give me a second[,]" and asked them if they had been smoking marijuana. *Id.* at 6, 15. In response, the three men "started yelling . . . aggressively[,]" although the officer could not remember what, if anything, Appellee said. *Id.* at 6, 18. As a result, Officer Bucek "told them to stop[.]" *Id.* at 6. He testified:

> [The men] all started screaming, you know, F you, officer. I attempted to get ID[']s from them. They said, you know, [d]on't touch me. Get away from me. You can't stop me. Why are you stopping me? And just essentially yelling at me.

*Id.* The officer told his partner, "if something happens here" to call for backup. *Id.* at 7.

Officer Bucek testified that he decided to pat the men down because "[t]hey were acting aggressively and yelling[, i]t kind of seemed liked they were circling" him and his partner, and he thought he was "in danger." N.T. at 8. After completing the pat down searches of the two other men and finding nothing, the officer asked Appellee to place his hands on a nearby pole so he

could conduct a "pat down." *Id.* at 7-8, 16. When he initiated the search, Appellee "kept scooting . . . away from" him around the pole. *Id.* at 7. It was only at that time that Officer Bucek thought "[t]here's something on [Appellee]. There's a reason why he's doing this." *Id.* at 8-9. Appellee eventually stopped moving and Officer Bucek patted him down and felt what he immediately identified as a "handgun in [Appellee's] sweatshirt front pocket." *Id.* at 9. Appellee did not present any evidence.

Based on this testimony, the suppression court found (1) Officer Bucek had reasonable suspicion of criminal activity to support an investigative detention of Appellee and his cohorts, but (2) the officer did not possess the requisite reasonable suspicion that Appellee was armed and dangerous to support a *Terry* frisk of Appellee. *See* Supp. Ct. Op., 12/8/21, at 6, 8-9. Although I agree with the trial court's determination that Officer Bucek did not have reasonable suspicion to conduct a frisk of Appellee, I also conclude that Officer Bucek did not possess the requisite reasonable suspicion to conduct an investigative detention of Appellee and his cohorts. Thus, I would affirm the trial court's order suppressing the evidence.

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Young*, 162 A.3d 524, 527-28 (Pa. Super. 2017) (citation omitted). To secure this protection, Pennsylvania courts require that officers "demonstrate ascending levels of suspicion to justify their interactions with citizens[.]" *Id.* at 528 (citation omitted). There are three

- 3 -

types of interactions between police and citizens – mere encounters, investigative detentions, and custodial detentions. *Id.*

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. **The hallmark of this interaction is that it carries no official compulsion to stop or respond.**
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. **Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity.** . . .

*Id.* (citation omitted & emphases added).

> An officer may conduct a *Terry* frisk under the following circumstances:
>
>> If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to **reasonably believe that the suspect may be armed and dangerous**, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to establish reasonable suspicion, the police officer must **articulate specific facts** from which he could reasonably infer that the individual was armed and dangerous. When assessing the validity of a *Terry* stop, we examine the totality of the circumstances giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch.
>
> To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. This Court . . . emphasized the significance of an officer's experience in assessing whether the requisite reasonable suspicion was present:
>
>> In conducting a reasonable suspicion inquiry, a suppression court is required to "afford due weight to the specific, reasonable inferences drawn from the facts in light of the

- 4 -

officer's experience[.]" Among the circumstances that can give rise to reasonable suspicion are the [officer]'s knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices."

***Commonwealth v. Bozeman***, 205 A.3d 1264, 1274 (Pa. Super. 2019) (citations & some quotations marks omitted; emphases added). Further, "[t]he purpose of a ***Terry*** frisk is not to discover evidence of a crime, but to protect the police officer conducting the investigation." ***Commonwealth v. Davis***, 102 A.3d 996, 999 (Pa. Super. 2014).

Preliminarily, I note that under ***Commonwealth v Barr***, 266 A.3d 25 (Pa. 2021), the smell of marijuana "may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." ***Barr***, 266 A.3d at 41. In ***Barr***, officers initiated a legal traffic stop and subsequently initiated a search after smelling burnt marijuana. ***Id.*** at 29-30. The officers found marijuana and a firearm in the vehicle. ***Id.*** at 30. At the suppression hearing, the trial court suppressed the evidence, finding that due to the Medical Marijuana Act (MMA)[3], the smell of marijuana is "no longer *per se* indicative of a crime[,]" making the search unconstitutional. ***Id.*** at 31-32. This Court vacated that order — concluding the trial court did not consider all relevant factors — and our Supreme Court granted review. ***See id.*** at 34-35.

---

[3] 35 P.S. §§ 10231.101-10231.2110.

Ultimately, the Supreme Court vacated this Court's decision, and reinstated the trial court's order suppressing the evidence. *Barr*, 266 A.3d at 44. The Court concluded that "lawful possession of an item due to legislative authorization to possess it" cannot afford an officer the information to infer criminal activity and effectuate a *Terry* stop. *Barr*, 266 A.3d at 43. Further, without prior knowledge that an individual is not permitted to possess an otherwise legal item, an officer cannot presume it to be possessed illegally. *Id. citing Commonwealth v. Hicks*, 208 A.3d 916, 936-37 (Pa. 2019) (officer could not assume that possession of a concealed firearm was indicative of criminal activity where it may be lawfully carried, and the officer did not have "articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner").

Contrary to the suppression court, I conclude Officer Bucek had no reasonable suspicion to escalate the mere encounter into an investigative detention. Officer Bucek initiated contact based solely on the smell of marijuana on an open street. Although he testified he noticed the odor became stronger as he approached the three men, Officer Bucek admitted he did not see Appellant or his cohorts smoking any substance before or after he approached them. N.T. at 4-5, 12. Upon approaching the men, Officer Bucek testified that Appellee and the two others became "aggressive[ ]" and yelled at him to "[g]et away" from them. *Id.* at 6, 8. It merits emphasis, however, the men did not become aggressive until after the officer approached them without any suspicion of criminal activity and demanded they comply with this

command to stop and answer questions. *Id.* The smell of marijuana alone coupled with crossing the street in what the officer suspected was an attempt to avoid him does not suggest nefarious intent. At this point, the officer could only justify a mere encounter, meaning the men were free to leave and had no obligation to comply with his commands. *See Young*, 162 A.3d at 528. They were also free to react negatively in a verbal and non-violent fashion to the prospect of an officer questioning them when they gave no impression of illegal conduct. However, Officer Bucek escalated the interaction into an improper investigative detention by demanding they stop based on the smell of marijuana coupled with their perceived attempt to avoid him by crossing the street, and their negative reaction to his command. *See* N.T. at 5-6, 15. I conclude this is insufficient to support a "reasonable suspicion of unlawful activity." *Young*, 162 A.3d at 528 (citation omitted). Thus, I would affirm the suppression ruling on this basis alone. While we often repeat that a mere encounter carries with it no official compulsion to stop or respond, sanctioning an officer's command to comply where a citizen refuses to stop or respond abrogates those same directives and pays lip service to the Fourth Amendment.

However, the trial court also concluded that the subsequent frisk of Appellee was not supported by a reasonable belief that he was armed and dangerous. The court opined:

> [W]hen asked why he decided to conduct a pat down search of the men, Officer [Bucek] cited their aggressive behavior and yelling and his perception that they were circling around him and

his partner. Specifically, with respect to [Appellee], [Officer Bucek] said [Appellee] was farthest from the officers, and, even though [Appellee] complied with [the officer's] order to place his hands on a . . . pole, he scooted around [it and] away from [Officer Bucek]. When asked what he was thinking, Officer [Bucek] testified he thought "There's something on him. There's a reason why he's doing this."

Officer [Bucek] did not state any specific and articulable facts indicating [Appellee] might be armed. [Appellee's] hands were on the pole when he was frisked. There was no testimony that he had reached into his pockets or concealed them at any time during his interaction with the police. [Officer Bucek] testified that he felt threatened by the men's aggression. He and his partner had weapons if they felt their use was necessary to control the situation, but they had no justification to frisk them. It appears, that [Officer Bucek] did so merely in a search for evidence of criminal activity, not for fear [Appellee] possessed a weapon. . . .

Supp. Ct. Op. at 8-9. Assuming *arguendo* that the investigative detention was proper, I agree with the trial court that Officer Bucek had no basis to support a **_Terry_** frisk.

Officer Bucek provided no specific or articulable facts to support a suspicion that Appellee was armed and dangerous. **_See Bozeman_**, 205 A.3d at 1274. While Officer Bucek decided to conduct a pat down frisk because the men were "circling" him and he felt he was "in danger," he did not testify that Appellee was reaching for his pockets, or that he, or either of his cohorts made any furtive movements, gave any indication that the men were armed, nor did the officer see anything resembling a weapon on Appellee's person.

While I acknowledge the officer stated he felt he was in danger when the men "kind of seemed liked they were circling" him, this still provides no indicia that any of the men had a weapon, and the officer acknowledged as

much. *See id.* at 8-9, 17. During his testimony, Officer Bucek admitted he did not suspect Appellee had "something" on him until **after** he attempted to initiate the frisk. *See* N.T. at 9. Even then, the officer gave no indication that he suspected Appellee had a **weapon** on him. *See* N.T. at 17 (Officer Bucek "didn't observe [a] bulge" in Appellee's sweatshirt pocket). Based on this record, there are no facts before us suggesting any of the men were armed and dangerous. The totality of the circumstances — the smell of burnt marijuana, the verbal aggressiveness, and the three men "kind of seem[ing] like they were circling around"[4] the officers — do not equate to articulable or specific facts justifying a *Terry* frisk. *See Bozeman*, 205 A.3d at 1274. Rather, I agree with the trial court that Officer Bucek conducted the frisk in search of criminal activity, which is not permitted. *See Davis*, 102 A.3d at 999; Trial Ct. Op. at 9.

I emphasize that general statements of safety concerns without factors indicating an individual is armed are not enough to justify the search of a person. *See Commonwealth v. Cooper*, 994 A.2d 589, 594-95 (Pa. Super 2010) (concluding the trial court should have suppressed evidence recovered after a *Terry* frisk when the officer made only "general statements of safety concerns" and there was no evidence that the defendant was reaching for his pockets or that the officer saw anything resembling a weapon on defendant's person), *citing Commonwealth v. Preacher*, 827 A.2d 1235, 1240 (Pa.

---

[4] N.T. at 8.

Super. 2003) (officer's statement in "general terms" that he feared for "his safety and the safety of others" did not provide a sufficient basis to conduct a frisk incident to an investigatory stop). Additionally, as stated *supra*, the smell of marijuana alone cannot justify the search of a vehicle. *See Barr*, 266 A.3d at 41. Logic follows that if smell alone does not give rise to suspicion of criminal activity inside of a vehicle, then smell alone on an open street does not permit an officer to initiate a search of one's person.

The Majority maintains, however, that the following circumstances combine to support reasonable suspicion for the pat down search: (1) upon the officers' approach, "the three men almost immediately became aggressive, cursed at the officers, and encircled" them; (2) when Officer Bucek performed a pat down search of Appellee's companions, "the second man . . . continued to act aggressively . . . like he was ready to turn around and do something[;]" and (3) Appellee "kept moving away" from the officer before he performed the search. Majority Opinion at 18-19 (record citations & quotation marks omitted). Further, the Majority concluded:

> The suppression court failed to consider the totality of the circumstances and give Officer [Bucek] the benefit of the inferences he drew from those circumstances. The record shows the officer reasonably suspected that criminal activity was afoot and that [Appellee] was armed and potentially dangerous. The totality of the circumstances establishes that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of other was in danger." *Cooper*, 994 A.2d at 592 (citation omitted).

Majority Opinion at 19 (some citations omitted). I disagree.

- 10 -

The Majority cites to factors that do not support a reasonable suspicion that Appellee was "armed and potentially dangerous." **See** Majority Opinion at 19. The aggression exhibited by the three men was completely verbal. Moreover, their anger and perceived encirclement of the officers stemmed from a command to stop that was unsupported by reasonable suspicion of criminal activity. The Majority also highlights the aggressive actions of the "second man" **after** Officer Bucek initiated the search, conduct which is irrelevant to (1) the decision to frisk **Appellee**, or (2) the decision the officer made **before** the continued aggression to search any of the men. **See** Majority Opinion at 18-19.

There is simply no evidence that Appellee or either of the other two men made any aggressive movements toward the officers; nor did Appellee reach into his pockets, or act as though he was ready to initiate physical contact. Instead, the Majority focuses on Officer Bucek's subjective feeling that he was threatened by their angry response. As noted **supra**, Officer Bucek's general statements of concern for his and his partner's safety absent suspicion Appellee was armed are not enough to conduct a pat down search. **See Cooper**, 994 A.2d at 594-95. The Majority's conclusion implies that an officer may initiate a custodial detention of an individual simply based upon a negative reaction to an unlawful police directive. Further, it would allow the greater intrusion of a **Terry** frisk of that person without any articulable suspicion of a weapon. It seems the Majority is selectively choosing certain testimony to afford all inferences to the losing party. **See Commonwealth**

*v. Cost*, 224 A.3d 641, 650 (Pa. Super. 2020) ("[T]he record of a suppression hearing is to be read in the light most favorable to the prevailing party[.]").

However, the Majority ignores the following: (1) Officer Bucek initiated an investigative detention based **only** on the smell of marijuana and an assumption that the three men crossed the street to avoid him, (2) he never expressed suspicion that any of the men possessed a weapon, and (3) the actions of Appellee **after** the officer initiated the search cannot support a finding of reasonable suspicion to initiate a frisk. Therefore, I conclude the Majority's analysis misses the mark.

Lastly, I acknowledge the concern of both the Majority and the Commonwealth over the trial court's statement that if the officers were fearful for their safety, they could have drawn their weapons. **See** Majority Opinion at 19-20; Commonwealth Brief at 10; Trial Ct. Op. at 8. However, I disagree with the Commonwealth's characterization that the trial court "seems to qualify itself as [a] use of force expert." **Id.** at 10-11. While I find the comment a bit cavalier, the court was simply reiterating its belief that Officer Bucek did not possess the requisite reasonable suspicion to perform a pat down search.

Officer Bucek could not justify an investigative detention where he only smelled burned marijuana, observed three men crossing the street, and the men had a negative reaction to his questions. **See Young**, 162 A.3d at 528 (citation omitted). Even if the investigative detention was proper, absent specific and articulable facts to support Officer Bucek's suspicion that Appellee

was armed **before** he initiated the pat down search, I would affirm the trial court's suppression order. **See Bozeman**, 205 A.3d at 1274; **Commonwealth v. Tillery**, 249 A.3d 278, 280 (Pa. Super. 2021) (where the record supports the decision of the suppression court, this Court is bound by those facts).

Thus, I respectfully dissent.