J-S15041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.D., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 308 EDA 2023 |

Appeal from the Dispositional Order Entered January 6, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0001452-2022

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 6, 2024**

Appellant, S.D., a juvenile, appeals from the dispositional order of the Court of Common Pleas of Philadelphia County adjudicating him delinquent for the offenses of carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, and possession of a firearm by a minor.[1] Appellant argues that the trial court erred in denying his motion to suppress the gun that police found on him on the ground that it was obtained as a result of an investigative detention without reasonable suspicion.  For the reasons that follow, we agree that the trial court erred in denying his motion to suppress and vacate the dispositional order.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(1), 6108, and 6110.1(a), respectively.

This case arises out of a police officer's frisk of Appellant on November 15, 2022 at a convenience store at Aramingo Avenue and Ann Street in Philadelphia, in which the officer found a gun in Appellant's waistband. Appellant, who was 15 years old at the time, was arrested and charged in a delinquency petition with the above offenses. On December 2, 2022, Appellant filed a motion to suppress the gun on the ground that the detention and frisk violated his constitutional rights under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.[2] The trial court held an adjudicatory and dispositional hearing on January 6, 2023 at which it heard evidence on the motion to suppress and addressed that motion before adjudicating the case.

Two police officers, Officer Garcia-Cardona and Officer Allen, testified at this hearing on the motion to suppress and their body camera footage was introduced in evidence. Both officers testified that on November 15, 2022, at around 7:30 p.m., they were on patrol in the area of Aramingo Avenue and Ann Street and that they followed Appellant and another male into the store. N.T., 1/6/23, at 6-7, 27-29. Both officers testified that Appellant walked to

_____

[2] Appellant also moved to suppress a black vial that Appellant dropped during his interaction with the officer. The evidence concerning the vial, however, was introduced with respect to the motion to suppress to show the circumstances leading up to the frisk and was not a basis of the adjudication of delinquency.

the back of the store away from the other male after entering and that the other male stayed in the front of the store. *Id.* at 7, 29.

Officer Allen testified that he stayed at the front of the store and asked the male who came in with Appellant if he had any gun on him and that the male lifted his shirt to show that he was not armed. N.T., 1/6/23, at 29. Officer Garcia-Cardona testified that he approached Appellant and asked him his age and if he had a firearm and that Appellant told him that he was 15 but did not give a straight answer on whether he had a firearm. *Id.* at 7-8. Officer Garcia-Cardona testified that Appellant seemed nervous and kept putting his hands in his pockets, that he told Appellant to keep his hands out of his pockets, and that Appellant pulled out a black vial, fumbled with it and dropped it on the floor. *Id.* at 8, 10-11. Officer Garcia-Cardona testified that he then conducted a frisk of Appellant's waistband area, felt the handle of a firearm, and removed the firearm, which was a Glock 19 handgun, from Appellant's pants. *Id.* at 11-12.

Both officers admitted that they had no specific knowledge when they entered the store that Appellant or the person who walked in the store with him was armed and that they did not see any bulge on Appellant that would indicate that he had a firearm. N.T., 1/6/23, at 19-23, 30. Officer Garcia-Cardona admitted that Officer Allen directed Appellant to lift up his jacket before Officer Garcia-Cardona asked Appellant about his age. *Id.* at 21-22. The officers testified that they suspected that Appellant was armed based on

Appellant's failure to respond to questions asking whether he was armed, Appellant's failure to comply with the request that he lift his jacket, Appellant's repeatedly putting his hand in his pockets, and Appellant's nervousness and dropping the vial on the floor. *Id.* at 8-11, 38-39.

Both officers were wearing body cameras at the time, and Officer Garcia-Cardona identified the recordings from their body cameras as accurate recordings of what happened. N.T., 1/6/23, at 16-18. Officer Garcia-Cardona's body camera video has no sound until after Appellant is frisked. Commonwealth Ex. 4. In this video, Appellant can be seen before the frisk displaying his hands to the officer, talking to the officer, and also putting his hands in his pockets after displaying them. *Id.* Officer Allen's body camera video has sound and both officers can be heard saying "lift your jacket up" to Appellant shortly after Officer Garcia-Cardona approached Appellant and began talking to him, before Appellant put his hands back in his pockets after showing them and before Appellant removed and dropped the vial. Commonwealth Ex. 5. In addition, this video shows that Officer Garcia-Cardona was standing close to Appellant, who was in a narrow area of the store with his back against the wall, when the commands to lift his jacket were given. *Id.*

The trial court denied the motion to suppress at the hearing. N.T., 1/6/23, at 50-51. Following that ruling, the trial court substantiated the charges of carrying a firearm without a license, carrying a firearm on the public

streets of Philadelphia, and possession of a firearm by a minor, adjudicated Appellant delinquent, and entered a dispositional order placing Appellant on probation. *Id.* at 54-55; Dispositional Order. This timely appeal followed.

In this appeal, Appellant challenges the denial of his motion to suppress. Our review in an appeal from the denial of a suppression motion is limited to determining whether the trial court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Parker*, 161 A.3d 357, 361 (Pa. Super. 2017). Where the trial court's factual findings are supported by the record, this Court is bound by those findings and may reverse only if the trial court's legal conclusions are erroneous. *Commonwealth v. Luczki*, 212 A.3d 530, 541-42 (Pa. Super. 2019); *Parker*, 161 A.3d at 362. The trial court's legal conclusions, however, are not binding on an appellate court and are subject to our plenary, *de novo* review. *Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019); *Parker*, 161 A.3d at 362.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable seizures by government officials. *Adams*, 205 A.3d at 1199; *Commonwealth v. Singletary*, 267 A.3d 1267, 1274 (Pa. Super. 2021); *Parker*, 161 A.3d at 362.

> Not every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protections. "Only when the officer, by means of physical force or show of

> authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

*Adams*, 205 A.3d at 1199 (quoting *Florida v. Bostick*, 501 U.S. 429 (1991)). A citizen, however, "may not be detained **even momentarily** without reasonable, objective grounds for doing so." *Commonwealth v. Cost*, 224 A.3d 641, 652 (Pa. 2020) (emphasis in original) (quoting *Florida v. Royer*, 460 U.S. 491 (1983)); *see also Adams*, 205 A.3d at 1201 ("The Fourth Amendment does not have a time limit; it protects individuals from unreasonable seizures, no matter how brief").

There are three levels of interaction between police officers and citizens: (1) a mere encounter, (2) an investigative detention, and (3) an arrest or custodial detention. *Adams*, 205 A.3d at 1199-1200; *Commonwealth v. Young*, 162 A.3d 524, 528 (Pa. Super. 2017); *Parker*, 161 A.3d at 362. An interaction between a police officer and a private citizen is a mere encounter where the citizen is under no compulsion to stop or respond to the officer and is free to ignore the officer and continue on his way. *Adams*, 205 A.3d at 1199; *Young*, 162 A.3d at 528. Because the citizen is under no compulsion, a mere encounter does not constitute a seizure and need not be supported by any suspicion of criminal activity. *Adams*, 205 A.3d at 1199; *Commonwealth v. Brame*, 239 A.3d 1119, 1127 (Pa. Super. 2020); *Young*, 162 A.3d at 529.

In contrast, an investigative detention requires that the citizen temporarily stop and respond to the officer's requests. *Commonwealth v.*

***Jefferson***, 256 A.3d 1242, 1248 (Pa. Super. 2021) (*en banc*); ***Young***, 162
A.3d at 528. An investigative detention therefore constitutes a seizure and is
constitutionally valid only if the officer has reasonable suspicion that criminal
activity is afoot. ***Adams***, 205 A.3d at 1199-1200; ***Commonwealth v.
Cunningham***, 287 A.3d 1, 7 (Pa. Super. 2022); ***Brame***, 239 A.3d at 1127.
The third category of interaction, arrest or custodial detention, must be
supported by probable cause. ***Adams***, 205 A.3d at 1200; ***Parker***, 161 A.3d
at 362. Whether an interaction between a private individual and a police
officer is a mere encounter or a seizure is a question of law. ***Young***, 162 A.3d
at 529.

A limited frisk or pat down for weapons is constitutional if an officer
conducting a lawful investigative detention has a reasonable belief that the
individual that he is detaining is presently armed and dangerous to the officer
or others. ***Commonwealth v. Arrington***, 233 A.3d 910, 915-16 (Pa. Super.
2020); ***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011).
Such a frisk, however, is constitutionally permissible only where the
investigative detention itself is supported by reasonable suspicion of criminal
activity. ***Adams***, 205 A.3d at 1203-04.

> Although an officer's subjective concern for his safety is, of course,
> a legitimate interest, it does not enter into a Fourth Amendment
> analysis unless the investigative detention was initially supported
> by reasonable suspicion of criminal activity. A contrary conclusion
> would eviscerate the Fourth Amendment since a concern for
> officer safety is present in nearly all interactions police have with
> members of the public. Simply put, in the absence of reasonable
> suspicion of criminal activity justifying an investigative detention,

officer safety is not a permissible basis for police to seize an individual during a mere encounter.

*Id.* at 1204 (citations omitted). If an investigative detention occurs without reasonable suspicion of criminal activity, evidence seized as a result of that illegal detention must be suppressed under the fruit of the poisonous tree doctrine. *Commonwealth v. Rohrbach*, 267 A.3d 525, 530 (Pa. Super. 2021); *Singletary*, 267 A.3d at 1280.

The critical issues here are therefore whether and when the police interaction with Appellant became an investigative detention, rather than a mere encounter, and whether the officers had reasonable suspicion of criminal activity at the time that they first detained Appellant. Appellant argues that the officers' interaction with Appellant that led to the frisk became an investigative detention when they ordered him to lift his jacket and that this detention was unconstitutional because they lacked reasonable suspicion at that time that Appellant was involved in criminal activity.[3] We agree.

The test for whether an interaction is a mere encounter or an investigative detention is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the

---

[3] The Commonwealth, although it had opposed the motion to suppress, agrees in this appeal that the command to lift the jacket converted the interaction to an investigative detention, that the officers lacked reasonable suspicion at that time, and that the trial court erred in denying the motion to suppress.

police presence and go about his business.'" **Adams**, 205 A.3d at 1200 (quoting **Bostick**). In applying this test, we consider all circumstances evidencing a show of authority or exercise of force, including the demeanor, manner of expression, and tone of voice of the officer or officers, the content of the questions or statements, the number of officers involved and whether they are visibly armed, and the location and timing of the interaction. **Singletary**, 267 A.3d at 1275; **Parker**, 161 A.3d at 363.

Here, these factors demonstrate that the interaction between Appellant and the officers became an investigative detention when the officers ordered him to lift his jacket. Officer Allen's body camera video shows that the officers told Appellant to "lift your jacket up" three times in a commanding voice. Commonwealth Ex. 5. In addition, there were two officers, they were in uniform and visibly armed, and they were positioned in a way that obstructed Appellant from simply ignoring them and walking away. **Id.**; Commonwealth Ex. 4. At the time the commands were given, Appellant was up against the wall in a narrow aisle of a store, Officer Garcia-Cardona was standing close to him, and Officer Allen was standing at the front of the store between Appellant and the door. Commonwealth Ex. 5; Commonwealth Ex. 4; N.T., 1/6/23, at 29. Under these circumstances, the repeated order to "lift your jacket up" would communicate to a reasonable person in Appellant's position that he was not at liberty to ignore the police presence and go about his business.

The trial court concluded that the command was only a request that Appellant was free to ignore because it was only made by Officer Allen, who was not next to Appellant. Trial Court Opinion at 8. To the extent that this conclusion is a factual determination, it is unsupported by and contrary to the record, as the video shows that the command was given by both Officer Allen, twice, and also by Officer Garcia-Cardona, who was right in front of Appellant. Commonwealth Ex. 5. To the extent that it is a legal conclusion that the command did not convey that Appellant needed to comply, it is erroneous, as it was given multiple times in a tone of voice that demanded compliance, as an order rather than a request, by armed officers under circumstances where Appellant's ability to walk away was obstructed. *Commonwealth v. Green*, 298 A.3d 1158, 1163 (Pa. Super. 2023) (commands by multiple uniformed, armed officers that defendant roll down car window or open car door converted mere encounter into investigative detention); *Commonwealth v. Hemingway*, 192 A.3d 126, 128, 131 (Pa. Super. 2018) (because officer ordered defendant to remove his hand from his pocket and did not merely ask him to do so, interaction with defendant was an investigative detention, not a mere encounter); *Commonwealth v. Morrison*, 166 A.3d 357, 366 (Pa. Super. 2017) (defendant was subjected to investigative detention when officers in full uniform told him to stop a second time when he did not obey their first direction to stop).

The record is also clear that the officers lacked the reasonable suspicion of criminal activity that is required for an investigative detention when Appellant was detained by the order to lift his jacket. Reasonable suspicion exists where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that the defendant was engaged in criminal activity. *Adams*, 205 A.3d at 1205; *Luczki*, 212 A.3d at 544; *Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa. Super. 2002) *(en banc)*. Neither an unparticularized suspicion or hunch that the defendant is involved in criminal activity nor the mere fact that the defendant is in a high crime area is sufficient to support an investigative detention. *Adams*, 205 A.3d at 1205 (inchoate and unparticularized suspicion or hunch is insufficient to permit investigative detention); *Brame*, 239 A.3d at 1131 (same); *Hemingway*, 192 A.3d at 131 (defendant's presence on the street in a high crime area with his hands in his pockets was not sufficient to show reasonable suspicion for investigative detention).

Both officers testified that they had no knowledge of specific facts concerning Appellant that would lead them to believe that he was involved in any criminal activity when they followed him into the store or when Officer Garcia-Cardona approached Appellant and testified that they did not see any bulge on Appellant that would indicate that he had a firearm. N.T., 1/6/23, at 19-23, 30. Rather, the only bases for reasonable suspicion of criminal

- 11 -

activity that the officers contended that they had or that the trial court found consisted of Appellant's nervousness, Appellant's putting his hands back in his pockets after showing them, Appellant's failure to obey the command to lift his jacket and answer whether he had a firearm, and Appellant's taking out the black vial and dropping it, which indicated both the possession of drugs and an attempt to distract the officers. *Id.* at 8-11, 25, 38-39; Trial Court Opinion at 8-9. All of these facts, with the possible exception of Appellant's nervousness, occurred after the officers directed Appellant to lift his jacket and therefore cannot be a basis for that investigative detention. Appellant's failure to comply with the order to lift his jacket necessarily occurred after that order was given. Officer Allen's body camera video shows that Appellant's putting his hands back in his pockets after showing them and Appellant's taking out the black vial and dropping it occurred after the officers directed him to lift his jacket. Commonwealth Ex. 5. In addition, Officer Garcia-Cardona testified that all of his conversations with Appellant took place after Officer Allen directed Appellant to lift up his jacket. N.T., 1/6/23, at 21-22.

Thus, at most, the only observation made by either officer that could provide a basis for their investigative detention of Appellant was the fact that Appellant was nervous. That is insufficient to make the detention constitutionally permissible. The law is clear that absent additional facts indicating that the defendant is engaged in criminal activity, the fact that the defendant is nervous when officers confront him is insufficient to show the

reasonable suspicion required for an investigative detention. *Morrison*, 166 A.3d at 365, 367; *Commonwealth v. Dales*, 820 A.2d 807, 815 (Pa. Super. 2003); *Reppert*, 814 A.2d at 1205-06.

For the foregoing reasons, we conclude that the frisk of Appellant occurred during an unconstitutional investigative detention without reasonable suspicion and that the trial court therefore erred in denying Appellant's motion to suppress. We accordingly vacate the dispositional order and adjudication of delinquency and remand with instructions to grant Appellant's motion to suppress.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/06/2024